262 So.2d 407 (1972)
Frank PERIGONI, Individually and for the Use and Benefit of his minor son, Jeffrey Perigoni
v.
John McNIECE et al.
No. 4949.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 1972.
*409 Frank J. D'Amico and George H. Jones, New Orleans, for Frank Perigoni and Jeffrey Perigoni, plaintiffs-appellees.
Keiler & Buckley, New Orleans, Sam O. Buckley, New Orleans, for John McNiece, defendant-appellant.
Before CHASEZ, STOULIG and BOUTALL, JJ.
CHASEZ, Judge.
Plaintiff, Frank Perigoni, instituted this action in tort individually and for the use and benefit of his minor son, Jeffrey Perigoni, who at the time of trial became a major and was accordingly joined as a party plaintiff. Parties made defendants were: John McNiece, Linda McNiece, Security Insurance Company, and Boston Old Colony Insurance Company.
Defendants answered and by way of reconvention John McNiece alleged damages for false arrest and malicious prosecution.
Prior to trial judgment was rendered by Summary proceedings, dismissing plaintiffs' suit against Security Insurance Company and Boston Old Colony Insurance Company. No appeal was made regarding the summary judgment dismissing these parties. Suit against Linda McNiece has been withdrawn because of lack of service.
After trial on the merits judgment was rendered in the lower court in favor of plaintiffs against the defendant in the sum of $10,965.98. Defendant's reconventional demand was dismissed. From this adverse judgment defendant appeals.
The facts of this case are disputed and in view of the nature of the claim we find it necessary to relate at length the various events giving rise to this action.
Jeffrey Perigoni alleges that on May 16, 1968 he was driving home on North Robertson, a one-way street in the city of New Orleans for traffic moving toward St. Bernard Parish, with a friend, James Bachemin, *410 at about 5:00 P.M., when he came to a stop behind a white Chevrolet halted by a red light on North Robertson and Desire Streets in the City of New Orleans. The light turned green but the Chevrolet driven by John McNiece and occupied by his daughter, Linda McNiece and her friend, Linda Davis, did not move. Jeffrey Perigoni sounded his horn and after a short interval the McNiece vehicle began to move very slowly forward. Perigoni sounded his horn again to urge the vehicle in front to go faster. Getting no response he passed the McNiece automobile on the right and then cut back to the lane he was originally in. At the next stoplight the McNiece vehicle stopped behind him. Linda McNiece then got out of the passenger side of her father's car and came forward to the plaintiff's car. She rapped on the driver's window and when Perigoni rolled the window down she ordered him to get out of his car. The plaintiff then alleges he rolled his window back up and started to move forward as the street light had changed. However, Linda McNiece began beating on the side of his car with a metal object which caused him to stop and get out of the car. Perigoni then yelled to John McNiece to get his "kid" back in the car. Seeing no response he walked back to John McNiece and told him he didn't want to fight his son.[1]
McNiece replied that it didn't matter because his son had an "equalizer". Perigoni then started to return to his car when he saw Linda McNiece standing in the general vicinity of the area left between the two stopped vehicles, holding vise-grip pliers in her hand. As he was turning away from her, preparatory to going to his car, he heard John McNiece shout to his daughter "Hit him, hit him, hit the S________O_______ B_________." Subsequently Jeffrey Perigoni's jaw was struck by the vise-grip pliers being wielded by Linda McNiece. Perigoni then shoved her to the ground and attempted to get the pliers from her. Linda Davis ran from the Chevrolet and tried to push Perigoni off Linda McNiece. John McNiece, half out of his automobile, also rushed towards the combatants. Perigoni alleges that John McNiece struck him several times punching him in his back. The testimony of the witnesses, James Bachemin and John D. Roberts, indicates that McNiece was seen to draw back his fist as if in preparation to throwing a punch, but no subsequent blow to Perigoni's person could actually be seen.
The incident quickly subsided when other vehicles caught in the rush hour traffic began sounding their horns. The parties returned to their respective cars with Perigoni turning his car into the right-hand lane where Bachemin noted the license number of defendant's automobile. Defendant, however, turned left at Lesseps Street, got out of the traffic and left the scene. The incident occurred between France and Lesseps Streets on North Robertson as both parties were traveling toward St. Bernard Parish.
Defendant contends that he was experiencing car trouble when the plaintiff's vehicle pulled up behind him at the Desire Street crossing. He managed to get his car going but Perigoni continued to blow his horn. Perigoni did pass him on the right but when he did he yelled something at his daughter. Defendant also alleges that when the Perigoni vehicle did cut back in front of him in the left-hand lane it struck his vehicle and caused him to run up the curb, which in turn, resulted in his daughter being thrown against the dashboard of his car, injuring her mouth and breaking her glasses. When they pulled up behind the Perigoni vehicle at the next stoplight his daughter grabbed the visegrip pliers and ran forward to the other car. He stated that he tried to call her back but that she was 22 years old and he *411 could not control her. Jeffrey Perigoni came back to John McNiece saying he didn't want to fight his little kid and then cursed him several times. He asserts that he took this abuse and succeeded in calming Linda down when Jeffrey Perigoni said something to his daughter and then hit her. It was after she was struck by Jeffrey Perigoni that she hit him back with the pliers. Plaintiff then knocked her to the ground and defendant rushed to put the plaintiff off his daughter. He asserts that he only used the "necessary force" to get plaintiff off his daughter.
John D. Roberts, driving a pickup truck, was behind the McNiece vehicle when the incident occurred. He stated in his testimony that he saw the driver of the McNiece auto hand the vise-grip pliers to a passenger who looked like a young lad to him. His further testimony substantially corroborates plaintiff's allegation. He heard the shout directing Linda McNiece to "hit that S______O____B_________."; although John McNiece's back was to him, he assumed it came from him. He also stated that he saw Linda McNiece strike the first blow with the pliers.
The trial court assigned no written reasons for its judgments. However, the trial judge had to determine the credibility of the witnesses. It is quite apparent that defendant's allegations were not believed. We find no manifest error in this determination.
Defendant stated that the Perigoni vehicle forced him to run up the curb, thereby causing damage to Linda McNiece's mouth and eyeglasses, suffering fractured anterior teeth and injury to her gums. Yet, while the accident occurred on May 16, 1968, she did not see a dentist for treatment until May 31, 1968. Defendant also stated that the plaintiff's car struck the right front fender of his vehicle. However, by deposition taken November 11, 1968, he stated that he did not know his car was struck until a much later date after the occurrence of the incident precipitating the blow to Perigoni.
It stretches credulity to believe defendant would be completely unaware of his car being scraped by another, especially if that car forced him to run over the street curbing.
It is important to note that no attempt was made by the defendant to subpoena or produce for trial Linda Davis, the third occupant of the McNiece automobile. Defendant's only explanation being that she was out of the State. Defendant knew of the impending law suit as early as September 18, 1968 yet nothing was done to secure her presence or testimony, even though her testimony might be material. We can only assume that her testimony would be adverse to the defendant. Oliver's Minor Children v. Oliver, 215 La. 412, 40 So.2d 803 (1949).
Defendant contends that plaintiff was the aggressor and is therefore unable to recover. The weight of the evidence, however, is just the opposite. Defendant would have this court place upon plaintiff the obligation to drive on, even though his automobile was being struck by repeated blows by a metal object. We find no merit to this claim.
Plaintiff's claim for damages is based on LSA-C.C., Article 2324, which states:
"Art. 2324. Liability for assisting or encouraging wrongful act.
"Art. 2324. He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
We are convinced that while John McNiece may not have actually, physically caused his daughter to strike the plaintiff, he assisted, encouraged and actively engaged in its commission. The evidence contained in the record amply supports this *412 determination. Defendant was seen by John D. Roberts, a witness, unassociated with either party, hand the vise-grip pliers (the weapon causing the damaging blow) to his daughter while both were seated in their car. Both Roberts and the plaintiff testified to hearing the shout of "hit him".
A defendant who provides the instrument of damage with full knowledge of the possible consequences and urges the unlawful act by shouts of encouragement is liable in solido with the one actually committing the tort. LSA-C.C. Article 2324.
Defendant further contends error by the lower court in denying his motion for continuance. Defendant cites LSA-C.C.P. Article 1602 as controlling, which states:
"Art. 1602. Peremptory grounds
"A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance. As amended Acts 1966, No. 186, § 1." (Emphasis supplied.)
Defendant applied for the continuance one week before trial of the matter, based on the grounds that Linda McNiece was a material witness and her unavailability for trial was due to her incarceration in a New Jersey State Prison, serving an indefinite sentence for a narcotics conviction. The trial judge denied the motion because defendant knew of the trial date some four months earlier. Defendant also knew that she was in prison three to four months before trial. We find no abuse of discretion. Linda McNiece's indefinite sentence does not indicate her ready availability for trial even if it was continued. Defendant could have asked for the continuance long before he did, however, his tardiness shows an attempt to confuse the issues by delay. We also note that adequate means were available to him to procure her testimony, by deposition or otherwise. Defendant's contention that her presence was necessary to discredit testimony of witnesses who thought she was a boy is without merit. The confusion as to her sex is not material to defendant's case, especially in view of the present day confusion many of us similarly experience.
Defendant's last allegation of error relates to the damages awarded the plaintiffs.
As a result of being bludgeoned by the pliers Jeffrey Perigoni suffered a comminuted fracture on the left side of his mandible, or jaw, and a compound fracture in the right angle of the mandible. "Arch bars" and "elastics" were used to wire his jaw in place and mend the fractures. Additionally, Perigoni was treated as an emergency patient at Mercy Hospital. He was also confined to the Eye, Ear, Nose and Throat Hospital for observation. Later a secondary infection developed by reason of an impacted wisdom tooth acting as a foreign body which resulted in plaintiff being hospitalized a second time and surgery for the extraction of the third molar and an open reduction of the fractured site of the right angle mandible by extra-oral approach.
Dr. Donald Duvigneaud, plaintiff's oral surgeon, characterized the injuries as severe. It was also shown at the trial that plaintiff's jaw was wired with its resultant incapacities and inconveniences for a period of eight to nine weeks after the incident and that he suffered permanent nerve damage, causing a loss of sensory feeling in his jaw.
Frank Perigoni, father of Jeffrey Perigoni, was awarded $1,465.98 as special damages for medical and drug bills and loss of wages incurred by his minor son; while Jeffrey Perigoni was awarded $7,500.00 for pain and suffering and $2,000.00 for permanent disability.
In view of the nature of the injuries and resultant consequences, we cannot find any abuse of discretion by the trial judge.
*413 Denial of defendant's reconventional demand for false arrest and malicious prosecution was proper.
Three elements must be proved by a party asserting damages for malicious prosecution: (1) the termination of the proceeding must be in his favor; (2) there must be a lack of probable cause; and (3) a showing that his accuser acted in malice. Cox v. Cashio, 96 So.2d 872 (La.App., 1st Cir., 1957). Defendant has not proved any of the three requisite elements. Additionally, we note that defendant pleaded guilty to simple battery during the trial of this matter in the Criminal District Court for the City of New Orleans.
For the above and foregoing reasons, the judgment of the lower court is affirmed with all costs to be paid by appellants.
Affirmed.
NOTES
[1] Jeffrey Perigoni alleges that he did not know Linda McNiece was a girl until the police told him some time after the incident. Bachemin, plaintiff's passenger, also thought she was a boy. John D. Roberts, a witness for the plaintiff, also assumed Linda was a boy until told otherwise.