323 So.2d 908 (1975)
Lawrence GALLIN and Donald Green
v.
The TRAVELERS INSURANCE COMPANY.
No. 7034.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1975.
Rehearing Denied January 13, 1976.
Writ Refused March 12, 1976.
*909 E. Howard McCaleb, III, New Orleans, for plaintiffs-appellees.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Glenn G. Goodier, New Orleans, for defendant-appellant.
Fazande & Ware, Hilliard Fazande, II, New Orleans, for plaintiff-intervenor-appellee.
Before SAMUEL, LEMMON and MORIAL, JJ.
MORIAL, Judge.
On March 11, 1972 an accident involving a 1967 Mercury and a McKenzie's Bakery truck occurred at the intersection of Almonaster and North Galvez Streets in New Orleans. The driver of the Mercury and his two passengers were injured in the collision. Donald Green, the owner and driver of the car and Lawrence Gallin, the front seat passenger, filed suit solely against the insurer of the truck, Travelers Insurance Company. On March 12, 1973 Leroy Snyder, the rear seat passenger of the car, filed a motion to intervene in the plaintiffs' action and a motion to join McKenzie Bakery Company and/or Entringer Bakeries, and Danis Murphy, the driver of the truck, as party defendants. Defendant thereafter filed an exception of no right or cause of action to the joinder and intervention. The trial judge sustained defendant's exception as to joinder but overruled the exception as to the intervention.
After trial on the merits the court concluded that the plaintiffs' version of the accident was more believable than defendant's and rendered judgment in favor of all plaintiffs. Green was awarded special damages in the amount of $824.00 and general damages of $3,500.00 for the injuries suffered. Gallin was awarded $1,715.00 in special damages and $4,500.00 for pain and suffering. Snyder was awarded $490.00 for medical expenses, $576.00 for loss of wages and $8,000.00 for pain and suffering. Defendant has perfected this suspensive appeal alleging error in all aspects of the trial court's judgment. We affirm except for a modification in the award to Snyder.
Defendant specifically alleges five areas in which the trial court erred. It asserts that: 1) the district court should not have overruled defendant's exception of no right or cause of action as to Snyder's intervention and therefore Snyder should have been dismissed from the suit; 2) the court abused its discretion in refusing to allow defendant a continuance of the trial in order to secure the testimony of the officer who investigated the accident; 3) the sole and proximate cause of the accident was the negligence of Green and accordingly, *910 judgment should have been rendered in favor of defendant; 4) the court abused its discretion in its quantum awards to all three plaintiffs; and 5) the court should not have awarded Snyder any damages for loss of wages.

INTERVENTION
We must decide whether LSA-C.C.P. Art. 1091 is to be given a broad or strict interpretation. C.C.P. Art. 1091 provides:
"A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant." (Emphasis supplied)
In 1967 we decided Resor v. Mouton, 200 So.2d 308 (La.App. 4 Cir. 1967) which greatly restricted intervention. In that case a two car automobile accident resulted in damage to a nearby building. The car owners sued each other and the building owner sought to intervene in the action. The court disallowed the intervention stating:
"The mere fact that the alleged damage to Gros' building resulting from the same accident which caused Resor's damage does not in our opinion give Gros a right to intervene in Resor's suit. While an issue necessary to be determined in the main suit (and also in any proceeding by Gros to recover his own damage) is whether the accident was caused by the negligence of Resor or Mouton or both, the resolution of this issue is not the `object' of Resor's suit but only a prerequisite to the attainment of such `object'." At 310
This interpretation of C.C.P. Art. 1091 was severely criticized by the Louisiana Third Circuit Court of Appeal in Bellow v. New York Fire & Marine Underwriters, Inc., 215 So.2d 350 (La.App. 3 Cir. 1968). After noting the former intervention article of the Code of Practice was substantially changed by the intervention Article of the Code of Civil Procedure the court stated:
"In our view, LSA-C.C.P. Article 1091 has broadened and thus increased the usefulness of the remedy of intervention. No longer is it essential that the intervenor have such a direct interest in the pending action that he will obtain immediate gain or suffer immediate loss. Now it is sufficient that he have a justiciable right `related to or connected with the object of the pending action against one or more of the parties thereto.' To enforce this right he may proceed in one of the three ways listed in the code article." At 353 (footnote omitted)
The court further noted that a prior Fourth Circuit decision, Boyd v. Donelon, 193 So.2d 291 (La.App. 4 Cir. 1966) recognized that the change in Art. 1091 was intended to liberally allow intervention.
The trial judge, in the instant case, being fully aware of this conflict among the circuits ruled that the position expressed in Bellow, supra, was sound and thus permitted Snyder's intervention. The trial judge's ruling is correct. We believe that Snyder did in actuality have a "right related to or connected with the object of the pending action against one or more of the parties thereto" according to a correct interpretation of C.C.P. Art. 1091. See Henry G. McMahon, Civil Procedure, 22 La.L.R. 370, 371 (1962) and Work of Appellate Courts 1967-1968, 29 La.L.R. 171, 285 (1969). To the extent that Resor v. Mouton, supra, and its progeny are inconsistent with the opinion expressed herein, they are now hereby overruled.[1]

*911 CONTINUANCE
[2] LSA-C.C.P. Art. 1602 specifies:
"A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; ..." (emphasis supplied)
Defendant argues that the continuance should have been granted because it asserted the officer was hospitalized at the time of trial due to a gunshot wound from an unrelated accident. On several dates the completion of the trial was delayed to await the officer's testimony. Each continuance was requested on the day of trial. In Perigoni v. McNiece, 262 So.2d 407, 412 (La.App. 4 Cir. 1972), we upheld the refusal of a trial judge to grant a continuance applied for one week prior to trial and concluded:
"Defendant could have asked for the continuance long before he did, however, his tardiness shows an attempt to confuse the issues by delay. We also note that adequate means were available to him to procure her testimony, by deposition or otherwise."
The record herein does not disclose that defendant ever made any attempt to utilize the provisions of LSA-C.C.P. Art. 1428(3) (c) to secure the testimony of the officer by deposition.
Furthermore, defendant has not shown that this police officer's testimony would have been material to the outcome of the case. The officer did not see the accident and thus could only have testified as to what he observed and not as to what he was told at the scene of the accident. Veal v. Hutchinson, 284 So.2d 60 (La.App. 4 Cir. 1973). Accordingly, the trial court acted in the best interest of the efficient administration of justice and clearly did not abuse its discretion.

PROXIMATE CAUSE
The accident occurred at an intersection with a complex traffic pattern:

*912 Plaintiffs Gallin and Green testified they were traveling on Almonaster in the river direction when the bakery truck, traveling on Galvez toward the Industrial Canal, ran a red light at the intersection and hit them on the right side in the middle of the car. Both testified they were sure they had the green light. The other passenger in the car, Snyder, stated he was new to the area and did not know what street they were on at the time of the impact but noted that the car was going straight and that the light was green in their favor.
A disinterested witness, Mr. Lemoine testified that he was looking through the window of his shop when he saw the accident. He fully corroborated the plaintiffs' testimonies as to direction of the vehicles and stated from his vantage point he could see that the truck had the red light. Although an attempt was made to discredit his testimony by establishing that he had confused this accident with another one occurring three weeks later, the trial court concluded that he was not mistaken.
Mr. Murphy, the driver of the truck, testified that he was on Galvez heading toward the Industrial Canal on a green light when the Green vehicle came into his path. He stated he did not know from which direction it came but knew only that it was right before him when he first noticed it.
Two independent witnesses for defendant corroborated the fact that the truck had a green light, but their testimony was inconsistent in some respects. One witness testified that the truck was traveling on Almonaster. This was in direct conflict with Murphy's testimony and, therefore, the court completely disregarded it. The other witness, a Mr. Lewis, was a passenger on a Public Service bus at the top of the Galvez Street overpass at the time of the accident. He stated that he saw the Green vehicle traveling on Almonaster in a lake bound direction when it quickly made a left turn and entered the "do not enter" portion of Galvez Street and thereupon collided with the truck. The court noted that this witness had great difficulty expressing himself.
After hearing all of the witnesses the court stated:
"... The Court is of the opinion that the testimony of the three plaintiffs, coupled with Lemoine, greatly outweighs Lewis' testimony, outweighs it to the point where the Court is of the opinion that the plaintiffs have carried their case by a preponderance of evidence for these reasons."
Based upon our review of the record, we cannot say that this conclusion is manifestly erroneous.

QUANTUM
The accident occurred on March 11, 1972 and all three plaintiffs were thereafter taken to Charity Hospital. Green spent the night there, Gallin remained for six to eight hours and Snyder stayed for three days.
On March 14, 1972 Donald Green saw a Dr. Charles Bowers for the first time. Bowers was informed the patient had been involved in a collision wherein he was thrown from an automobile and was rendered unconscious for five to ten minutes and when aroused was unable to move or raise his right arm. After examination Bowers concluded the patient had experienced a cerebral concussion, lacerations and contusions of the forehead and scalp, contusions and sprains of the right shoulder and cervical sprain (whiplash type injury). The patient was treated with analgesics, muscle relaxers, and daily diathermy and was discharged on April 20 of the same year.
Due to the injury, Green testified he missed work from March 12 through April 2 and then on intermittent days thereafter when he did not feel well. He also stated that the accident gave him blurred vision *913 for a couple of weeks, that he still has dizzy spells and that his left shoulder still gives him trouble.
The trial court awarded Green $434.00 for medical expenses, $390.00 for loss of wages and $3,500.00 for pain and suffering. Plaintiff's medical evidence regarding his injuries and treatment is uncontradicted and therefore we have no basis on which to conclude that this award is excessive.
Lawrence Gallin also saw Dr. Bowers about three days after his discharge from Charity Hospital. On March 14, 1972 the patient told Bowers he had been knocked unconscious in an automobile accident and consequently suffered from severe headaches, pain in left lower chest and back and elbow pain. The doctor noted that the patient could hardly walk and almost had to be carried into the office. He further observed numerous cuts and bruises which had been sutured or otherwise repaired and after examination concluded the patient suffered from cerebral concussion, whiplash of the cervical spine, lumbar strain, laceration of the right eyebrow and right below, multiple contusions and traumatic myositis. He was treated with muscle relaxants, antispasmodics, warm baths, plus diathermy and local care to the skin injuries. He was discharged on May 1, 1972.
The bill for Gallin's treatment came to $797.00. This was considerably higher than Green's but Bowers stated that Gallin's injuries were much more severe and therefore required double the treatment, e. g., diathermy to the neck and back. The court remarked that "these fees are awfully high" but concluded it was judicially bad business to say they were high in the absence of conflicting medical testimony. Hence, the court awarded $805.00 medical representing Bowers' bill plus $8.00 for drugs, $910.00 for loss of seven weeks wages, and $4,500.00 for pain and suffering. We cannot say the trial abused its "much discretion."
Leroy Snyder remained in Charity Hospital for three days after the accident. On March 23, 1972 he saw a Dr. Joseph Braud and informed him he had been in an automobile accident on March 11. The doctor noted the patient had four fractured ribs, pain and discomfort in the neck and right eye, limitation of motion in all directions, multiple scratches on chest and back, swollen and discolored rib cage, and difficulty in breathing. Although he did not specifically remember, he stated he probably treated Snyder with diathermy and hot packs. The patient was thereafter discharged on June 22, 1972, after 43 office visits, and was expected to have no permanent disability.
The court concluded that broken ribs are "rather painful" in that they impair breathing and awarded $8,000.00 for pain and suffering. It also awarded $490.00 for medical expenses and $576.00 for loss of wages. Although somewhat high, the award for pain and suffering is not an abuse of the "much discretion" vested in the trial court. The award for loss of wages is, however erroneous. Both parties stipulated during trial that no claim was to be made for this element of damages. Accordingly, the sum of $576.00 is to be deleted from Snyder's total award.
The judgment of the trial court is affirmed as to plaintiffs Green and Gallin and as to plaintiff Snyder is amended to delete the sum of $576.00. Defendant is to pay all costs.
Amended and affirmed.
LEMMON, Judge (dissenting in part).
The combination of an overtreating physician and a perhaps overgenerous trial judge has resulted in awards to Lawrence Gallin and Donald Green which constitute an error of law.
*914 There was no expert evidence that the medical bills of Green ($328.00 for six weeks of office treatment, consisting of daily diathermy at $10.00 each) and Gallin ($797.00 for seven weeks of office treatment) were excessive in monetary amount or that the frequency of treatment was unwarranted, although this excessiveness is patent to experienced attorneys and judges. Nevertheless, since the record does not even suggest that these plaintiffs were at fault in undertaking the excessive treatment and incurring the bills, they are entitled to recover the full amount of the medical bills. Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir. 1972).
However, these excessive treatments and medical bills cannot be used to justify an award for pain and suffering which is otherwise unsupported by the record. Such justification is doubly unfair to defendants. The evidence, viewed favorably to plaintiffs, does not support awards greater than $1,750.00 to Gallin and $1,250.00 to Green.
The $8,000.00 award to Snyder is completely unsupported by any medical evidence. He claimed three days of hospitalization at Charity Hospital for broken ribs, but presented no hospital records or supporting evidence. He was treated by a private physician for 15 weeks, but that doctor neither took X-rays nor examined the X-rays taken at Charity. I would hold the proof insufficient as to the rib injury, on which the trial judge based the major portion of his award. Furthermore, the doctor had no records at trial except his medical report which stated a diagnosis of contusions, abrasions, cervical sprain and a "history of fractured ribs" and essentially had no independent recollection of the treatment. The total bill was $490.00.[1] That evidence does not support an award greater than $2,750.00.
NOTES
[1] Pursuant to our administrative rules the matter of overruling Resor v. Mouton was submitted to the entire court for a determination of whether this case should be resubmitted to the entire court or whether the panel should hand down its opinion overruling Resor v. Mouton. By majority vote Stoulig, J. dissenting, the panel was authorized to hand down this opinion overruling Resor v. Mouton.
[1] Snyder's treating physician was not the doctor who treated Gallin and Green.