GUIDRY, Judge.
Plaintiff, a guest passenger in an automobile being driven by her Grandfather, was injured when her host’s automobile crossed the center line of Louisiana Highway 1205 and ran head-on into an oncoming vehicle. State Farm Mutual Automobile Insurance Company (State Farm) insured both vehicles involved in the collision. Following trial the district court rendered a general damage award in favor of plaintiff and against State Farm for the sum of $86,500.00 and itemized same as follows:

“A. Severe multiple fractures of the jaw.$15,000.00

B. Severe cerebral concussion . . 10,000.00

C. Multiple fractures to the arm, resulting disability and outward turning of the palm . . . 15,000.00

D. Inward rotation of jaw resulting in very noticable dis-figurment (sic) and loss of bite and scarring of face . . . 25,000.00

E. Loss of one tooth. 1,500.00
F. Physical and mental pain and suffering over an extended period of time . 15,000.00
G. Absence of school activities in her senior year . 5,000.00”
State Farm has appealed urging, in a single specification of error, that the damages awarded by the trial court are grossly excessive. Plaintiff has neither appealed nor answered the appeal of State Farm.
Proper consideration of the issue raised on appeal requires an analysis of the facts disclosed by the record.
The accident occurred on the night of July 9, 1976. On the date of accident Cynthia Thomisee was seventeen years of age. She was a high school senior and lacked but two credits for graduation. As a result of the accident Cynthia was hospitalized for a period of 36 days for treatment of her injuries which are generally described as cerebral concussion; multiple fractures of the lower jaw; loss of one tooth; and, a closed fracture of the left humerus, middle one third and a supracondylar fracture of the same bone (just above the elbow). Following her release from the hospital Cynthia recuperated at her home being seen by her attending physicians on an outpatient basis. Because of her injuries Cynthia was unable to attend school during the fall semester of 1976, however, she was provided with a tutor by the Rapides Parish School Board and completed her studies on schedule, graduating at midterm. A further more detailed analysis of the medical and other evidence presented with respect to her injuries is hereafter set forth, however, at this point we observe generally that Cynthia made an excellent recovery in a relatively short span of time in that by May of 1977, some ten months post accident, she had fully recovered from her injuries with minimal residual disability of the left arm and mouth and no appreciable observeable disfigurement. At the time of trial Cynthia was 19 years of age and enrolled as a student at Louisiana College.
During her hospitalization and/or convalescence at home Cynthia was treated by Dr. Hubert Prevost for her cerebral concussion; Dr. John T. Weiss, for her arm injury; and, Dr. Bernard C. Hollier, for the frac *1058 tures of her mandible. All of these doctors testified at trial.
CEREBRAL CONCUSSION
Dr. Prevost, a specialist in general surgery, first saw Cynthia in the emergency room of Rapides General Hospital on the night of the accident at the request of Dr. Weiss. His examination disclosed that Cynthia was suffering from a concussion, with no evidence of a subdural hematoma. Dr. Prevost described Cynthia’s injury as an injury to the brain, with a loss of consciousness, without any tearing, bleeding or trauma to the brain itself, “like a fighter, he gets knocked out, he has had a concussion . ”. He prescribed no treatment except that Cynthia be watched closely. On the following day, Dr. Prevost’s examination of Cynthia disclosed that her chest was perfectly clear, no fractures around the chest, heart normal, abdomen normal, lungs were clear, although she did have a full bladder and had been catheterized for that. The neurological was within normal limits, pupils round and equal and reacted to light. In connection with this second examination, on the day following the accident, Dr. Pre-vost opined “. -. . and I felt that, ., she was probably alright, at that time . . . (Tr. pg. 98). Dr. Prevost further testified, in summary, that Cynthia sustained a cerebral concussion from which she was completely recovered, without any residual, some five or six days post-accident.
INJURY TO LEFT ARM
Cynthia was attended for her arm injury by Dr. Weiss, an orthopedic surgeon. Dr. Weiss diagnosed Cynthia’s injuries to her arm as a closed fracture of the left humerus, occurring about the middle third, and a supracondylar fracture of the same bone, the latter fracture being just above the elbow. He treated the fractures with traction and did a closed reduction of both with fairly good position and the arm was then placed in splints and kept immobilized by the use of sandbags. During her hospitalization Cynthia was required to remain constantly in bed so as to prevent any movement at the fracture sites. Shortly prior to August 15, 1976, the date of Cynthia’s discharge from the hospital, her arm was placed in a “hanging arm cast”, which extended from her left palm to a point just above the upper fracture site. Cynthia was released from the hospital on the aforesaid date with instructions to sleep in a semi-sitting position by utilizing a recliner. Dr. Weiss’s first follow-up visit occurred on August 25,1976. At that time Cynthia had no complaints and although the fracture sites were not yet healed she was allowed to sleep in a normal position. The next follow-up visit occurred on September 9th at which time, her progress being satisfactory, Dr. Weiss removed the cast and her arm was placed in a sling. Cynthia was instructed to commence gradual motion exercises. Cynthia was next seen by Dr. Weiss on September 23, 1976. At this time Cynthia lacked 25 or 30 degrees full extension and flexed to 95 to 100 degrees, a limitation which Dr. Weiss suggested was to be expected two weeks following cast removal. The next follow-up visit occurred on November 4, 1976. Dr. Weiss’s notes for this visit indicate that Cynthia was getting along well and had no complaints. Her range.of motion in the left arm had increased but she still lacked 5 degrees full extension and 30 degrees full flexion. She was advised at that time that she could use her arm normally except that she should avoid contact sports. She was told to return in six months. Cynthia’s next and final visit to Dr. Weiss was on May 6, 1977, ten months post accident. His examination on this visit disclosed that the fractures had healed and were strong. She lacked 5 degrees full extension and 15 degrees full flexion, however, Dr. Weiss felt that with continued use of the arm this condition would improve to probably 3 degrees lack of full extension and 10 degrees full flexion, a limitation described by Dr. Weiss as “function wise, very minimal”. When questioned regarding any other residuals, Dr. Weiss explained that Cynthia had a slightly visible palpable angulation of the humerus proximately, which was explained by Dr. Weiss *1059 as being a “little bit of a bump”. When asked the significance of this condition, he replied:
". . . its not cosmetically, you know, bad, it just, if (sic) look closely you can see that there is a slight difference in that arm and the other one.”
INJURIES OF THE FACIAL AREA
Cynthia was treated for her injuries in the facial area by Dr. Bernard C. Hollier, an oral surgeon. Dr. Hollier described her injuries as compound comminuted fractures of the mandible, specifically the right con-dile, the midline and the left body of the mandible, complete evulsion of one tooth, lower left central inside, and a deep laceration of the left cheek and chin. During the first days of her hospitalization Cynthia’s jaw was temporarily immobilized and the facial laceration sutured. On July 14, 1976, Cynthia was taken to the operating room, placed under general anesthesia, and a closed reduction of the fractures was performed. This latter procedure was described by Dr. Hollier as applying archbars to the teeth, top and bottom, wiring the teeth to these bars and at the same time straightening up the fractures and putting them in good position. Following this procedure the jaw is wired shut and the patient must be on a full liquid diet. Dr. Hollier testified substantially as follows regarding Cynthia’s post-operative progress. The facial sutures were removed on July 18th. On the 21st of July x-rays showed good alignment of the fractures and the patient was taken off of antibiotics. On August 15th while Cynthia was yet in the hospital, the inner maxillary elastics were removed and Cynthia was thereafter followed as an outpatient. Dr. Hollier first saw Cynthia as an outpatient on August 23rd at which time she was able to open her mouth 5/16th of an inch. Her progress being satisfactory she was started on stretching exercises. On her next visit, August 30th the archbars were removed from the upper teeth and she was able to open her mouth V2 inch. Cynthia was next seen on September 13th on which date the lower archbar was removed. Cynthia was then seen periodically until her last visit on January 24, 1977, at which time she was released from further treatment. Dr. Hollier testified that upon discharge the fracture sites were healed and stable, there was good range of jaw movement and her mouth opening was within normal limits. The Doctor did indicate the presence of minimal residual disability in that she had a little collapsing inward of the left side of the jaw, partially closing the space where she lost a tooth, which circumstance likewise caused some change in her bite. Additionally, Cynthia at times sensed a tingling or numbness in the lower lip which indicated a little residual nerve injury.
In addition to the medical evidence summarized above the record contains the testimony of Cynthia and her mother and father regarding her hospitalization and convalescence. The testimony of Mr. and Mrs. Thomisee, to a great extent, mirrors that of Cynthia and, like Cynthia’s, appears to be most candid and free of exaggeration. The trial judge so found. Cynthia did not testify that she suffered severe or excruciating pain, rather she candidly admitted being kept reasonably comfortable, that is, as comfortable as one can be following institution of the medical procedures briefly outlined above. As to the presence 01 residual disabilities Cynthia testified that her bottom jaw receded inwards causing her some bite difficulty; she has a slight scar on her chin which has become less discernible through the passage of time; she has a small bump on her upper left arm at the fracture site; and, when walking or standing with her arms outstretched alongside her body the palm of her left hand tends to face outward. As to the effect of her injuries on her lifestyle, Cynthia admitted that at the time of trial she was fully capable of doing basically everything she had done pri- or to the accident.
On the basis of the evidence above set forth the trial court rendered the general damage award which appellant asserts is excessive. We have reviewed this award in light of the facts above set forth and the principles and methodology governing appellate review of quantum awards as set *1060 forth in LSA-C.C. Article 1934(3); Coco v. Winston Industries, Inc., 341 So.2d 322 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); and, as most recently elaborated upon in Reck v. Stevens, 373 So.2d 498 (La.1979), and find that the award made is clearly excessive for the reasons set forth hereafter.
In framing his award the trial court itemized or specified the amount awarded for each item of damage found. We find no abuse of discretion with respect to the amounts awarded for loss of one tooth, resulting disability of the arm and jaw nor with the amount awarded for noticeable disfigurement. With reference to the latter we defer to the trial judge’s observation in his reasons for judgment that personal observation does disclose that Cynthia did suffer some noticeable disfigurement and that the photographs in the record, P-6 and P-7, do not clearly reflect such disfigurement. Our only difficulty with those portions of the specified awards is that the trial court apparently lumped his award for disability of the arm with the general damage award for the arm injury and it is not clear how much of the $15,000.00 award was meant for residual disability to Cynthia’s left arm and how much of such award was meant to compensate for the injury itself. Under the circumstances and for the purpose of review we consider it appropriate to segregate this award by assigning two-thirds thereof for residual disability. When this is done, i. e., allowing the sum of $10,000.00 for residual disability of the arm, Cynthia will receive the total sum of $36,500.00 for residual disabilities of the arm and mouth, loss of one tooth and disfigurement, a sum which in our judgment, although generous, does not exceed the highest award which was reasonably within the discretion of the trial court.
We consider the remainder of the award, although itemized separately, as the general damage award for the mental pain, physical suffering and inconvenience endured by Cynthia as a direct result of the injuries sustained. Considering the itemized awards for residual disabilities it is seen that for these items of damage the trial court allowed the total sum of $50,-000.00, an amount which, in our opinion, under an interpretation of the evidence most favorable to plaintiff is excessive. As previously mentioned there is no evidence in the record to indicate that plaintiff suffered severe or excruciating pain. Although plaintiff did suffer a cerebral concussion the record clearly indicates that on the day following the accident her treating physician felt that she was alright at that time and, in any event, she was fully recovered from the concussion injury 5 or 6 days after the accident. With regard to the arm injury, by November 4, 1976, four months post accident, plaintiff was advised that she could resume normal activity except that she should avoid contact sports and by May 6, 1977, she was fully recovered except for the minimal residual disability for which she is separately compensated. With regard to the fractures of the mandible, she was discharged, requiring no further treatment, on January 24, 1977. Although Cynthia did miss the last semester of her senior year in high school, a circumstance which we know caused her much distress, she was tutored, did graduate, and although she may not have participated in all of the graduation activities, she was physically able to take part had she wished to do so. Cynthia has since entered college and candidly admits that her lifestyle has not changed.
For the reasons articulated above we conclude that the general damage award of the trial court, other than for residual disability, represents a clear abuse of the much discretion allowed the trial court by LSA-C.C. Article 1934(3).
In reducing this portion of the award we are mindful that such reduction is permissible only to the highest amount which could have reasonably been awarded by the trial court under an interpretation of the evidence most favorable to plaintiff. Viewing the evidence in this light; considering the particular effect on plaintiff of the particular injuries suffered; and, deriving such aid as is possible from the awards *1061 made in similar cases,[1] we conclude that the evidence supports a general damage award (other than for residuals) in the $15,000.00 to $30,000.00 range. Accordingly, we will reduce the award for all items of damage suffered by plaintiff, other than for residual disability, to the sum of $30,000.00.
For the above and foregoing reasons the judgment of the trial court is amended so as to reduce the general damage award to Cynthia Ann Thomisee from the sum of $86,500.00 to the sum of $66,500.00. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by plaintiff-appellee.
AMENDED AND AFFIRMED.

. Bodie v. Government Employees Insurance Company et al., 349 So.2d 1327 (La.App. 1st Cir. 1977), writ refused; Campo v. George, 347 So.2d 324 (La.App. 4th Cir. 1977); Gallin v. Travelers Insurance Company, 323 So.2d 908 (La.App. 4th Cir. 1976) writ refused; Pickens v. State, Through Dept. of Highways, 346 So.2d 1325 (La.App. 3rd Cir. 1977); Geiger v. Hallmark, 355 So.2d 1031 (La.App. 4th Cir. 1978); Perigoni v. McNiece, 262 So.2d 407 (La.App. 4th Cir. 1972); Collier v. Maryland Casualty Company, 190 So.2d 481 (La.App. 1st Cir. 1966); and, Roberts v. The City of Baton Rouge, 238 So.2d 203 (La.App. 1st Cir. 1970).