346 So.2d 1314 (1977)
David T. SHIVELY and Deanna Bodin Shively, Plaintiffs-Appellees-Appellants,
v.
Peter PICKENS et al., Defendants-Appellants-Appellees.
No. 5997.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
*1316 Kramer & Davis by James D. Davis, Alexandria, for plaintiff-appellant.
William J. Doran, Jr., Baton Rouge, for defendant-appellant.
Gist, Methvin & Trimble by H. B. Gist, Jr., Alexandria, for defendants-appellees.
Otis E. Lomenick, Jr., and Kenneth Boagni, Jr., Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
GUILDRY, Judge.
The above numbered and entitled matter was consolidated for trial in the lower court with the following cases:

Pickens v. State of Louisiana, through the Department of Highways, Docket No. 5998, 346 So.2d 1325 (La.App.3rd Cir. 1977).

Richard v. Zurich Insurance Company et al., Docket No. 5999, 346 So.2d 1327 (La. App.3rd Cir. 1977).
Thierry v. Pickens et al., Docket No. 6000, 346 So.2d 1328 (La.App.3rd Cir. 1977).
Charles v. Pickens et al., Docket No. 6001, 346 So.2d 1329 (La.App.3rd Cir. 1977).
We decide all of these cases today. The facts and law common to all are set forth herein, however, those facts and questions of law peculiar to each of the consolidated cases are set forth in separate opinions which we likewise hand down this date.
These consolidated cases arise out of a two-car head on collision which occurred when an automobile being driven by Peter Pickens skidded out of control and struck a vehicle being driven by David Shively. Guest passengers in the Pickens vehicle included Robert Richard, Floyd Thierry, Sr., Whitney Charles and Peter Barnaby. Mrs. Deanna B. Shively was a passenger in the vehicle being driven by her husband, David. The accident occurred at approximately 3:00 P. M. on September 2, 1973, on the "Old River Bridge", U.S. Highway 84, in LaSalle Parish.
The instant suit was filed by David T. Shively, individually and as head and master of the community, seeking to recover damages for his personal injuries, property damage, and medical expenses for himself and his wife, all incurred as a result of the alleged negligence of defendants, Peter Pickens and the State of Louisiana, through the Department of Highways (hereinafter referred to as the Highway Department). Plaintiff's wife, Deanna Shively, joined in her husband's suit seeking to recover damages for her personal injuries. Also made defendant is Zurich Insurance Company, insurer of the Pickens' vehicle.
The Highway Department filed answer denying any negligence on its part and alleged that the accident was solely caused by the negligence of Peter Pickens. Alternatively, the Highway Department pleaded the contributory negligence of David T. Shively. Peter Pickens and his insurer, Zurich, filed answer denying any negligence on their part, alleging in answer and by way of a third party demand that the sole cause of the accident was the negligence of the defendant, Highway Department. The third party demand of Peter Pickens and his insurer seeks contribution from the Highway Department in the event that Pickens and the Highway Department are cast as joint tortfeasors.
In Suit No. 5998, supra, Peter Pickens brought an action against the Highway Department seeking to recover damages for personal injuries, medical expenses, property damage, and lost wages. The Highway Department filed answer denying any negligence on its part.
*1317 In Suit No. 5999, supra, Robert Richard seeks to recover damages for personal injuries, medical expenses, and lost wages sustained as a result of the alleged negligence of Peter Pickens and the Highway Department. Defendants, Peter Pickens and his insurer Zurich, and the Highway Department answered denying any negligence on their respective parts. Pickens by way of a third party demand seeks contribution from the Highway Department. Also named as defendant in this suit was Allstate Insurance Company. Plaintiff alleged that he had a policy of liability insurance issued to him by Allstate which policy contained provisions extending uninsured motorist protection to petitioner. Allstate filed a motion for summary judgment. After a hearing on the motion the trial court granted judgment in favor of Allstate. Richard appealed. On appeal the trial court judgment granting Allstate's motion for summary judgment was affirmed. Robert Richard v. Zurich Insurance Company, et al., 318 So.2d 83 (La.App.3rd Cir. 1975). The judgment dismissing Richard's claim against Allstate is now final.
Suit Nos. 6000 and 6001, supra, were brought by Floyd Thierry, Sr. and Whitney Charles, respectively. Both seek to recover damages for personal injuries and medical expenses, and lost wages all incurred as a result of the negligence of Peter Pickens and the Highway Department. Again, each defendant answered denying any negligence on its part, alleging instead that the sole cause of the accident was the negligence of the other defendant. As in the other suits Pickens seeks contribution from the Highway Department by way of a third party demand.
After trial of these consolidated actions the district court found that the accident was caused solely by the negligence of the Highway Department. Accordingly, in the case at bar judgment was rendered as follows:
In favor of Mrs. Deanna Shively and against the Highway Department in the sum of $125,000.00.
In favor of Mr. David Shively, individually, and against the Highway Department in the sum of $15,000.00.
In favor of Mr. David Shively, as head and master of the community, and against the Highway Department in the sum of $7667.46.
In Suit No. 5998 judgment was rendered in favor of Peter Pickens and against the Highway Department for the sum of $22,500.00 in general damages and $17,496.60 in special damages.
In Suit No. 5999 judgment was rendered in favor of Robert Richard and against the Highway Deparment for $3,000.00 in general damages and $1,120.15 in special damages.
In Suit No. 6000 judgment was rendered in favor of Floyd Thierry, Sr., and against the Highway Department for the sum of $4,000.00 in general damages and $2,717.49 in special damages.
In Suit No. 6001 judgment was rendered in favor of Whitney Charles and against the Highway Department for the sum of $3,000.00 in general damages and $1,559.20 in special damages.
The Highway Department has appealed from these judgments. The plaintiffs, other than Peter Pickens and Whitney Charles, have appealed from that portion of the judgments dismissing their respective demands against Pickens and his insurer, Zurich. Pickens and Charles have neither appealed nor answered the appeals filed by the other parties.
The issues presented on appeal are:
1. Was the Highway Department guilty of negligence which proximately caused the accident?
2. Was Peter Pickens guilty of negligence which caused or contributed to the accident?
3. If there is liability on the part of the Highway Department, were the damages awarded excessive?
The issues numbered 1 and 2 are common to all of the suits and will be fully treated *1318 in this opinion, however, issue number 3, insofar as it applies to the respective plaintiffs will be discussed and disposed of in the separate opinions rendered in suits numbered 5997 through 6001.

WAS THE HIGHWAY DEPARTMENT GUILTY OF NEGLIGENCE?
Plaintiffs contend that the Highway Department's negligence consists of having failed to properly surface and maintain highway U.S. 84 at the "Old River Bridge". Specifically, plaintiffs aver that a dangerous condition existed in that the section of highway 84 referred to was excessively slippery when wet; that the Highway Department had knowledge of such condition both actual and constructive; and, despite knowledge of said condition, which was both obviously and patently dangerous, the Highway Department failed to remedy such condition and/or failed to place warning signs at the said bridge, to warn of the dangerous condition. The trial court so held.
Our review of the record discloses that generally the facts in regard to this issue are undisputed.
The testimony of James W. Pharis, the investigating trooper, reveals that the accident occurred at approximately 3:00 P. M. on September 2, 1973, midway across the "Old River Bridge" on U.S. 84. The bridge is a two-laned asphalt highway, which is 1003 feet long and 23 feet wide. The bridge is flat and straight. The testimony of Officer Pharis, as well as all of the witnesses, indicates there was a drizzling rain at the time of accident and that the highway was wet. Officer Pharis stated his investigation of the accident revealed that just prior to impact the Pickens vehicle, a 1964 Chevrolet, was headed in an easterly direction and that the Shively vehicle, a 1969 Ford stationwagon, was headed in a westerly direction. He observed that both of the vehicles were heavily damaged. The officer testified that the surface of the roadway was very slick. He was not able to discern any skid marks on the bridge surface. The posted speed limit was 60 mph, and there were no warning signs posted on either of the two approaches to the bridge.
State Trooper Wayne McGuffee also visited the scene of the accident on September 2, 1973. He testified that a personal examination of the bridge on this date showed it to be slicker than the asphalt approaches on either end. He found the bridge to be unusually slick. Officer McGuffee had investigated two previous accidents on the bridge, one which occurred on August 16, 1973 and the other on August 17, 1973, and a subsequent accident which occurred on the bridge on September 5, 1973. In this connection three Louisiana traffic accident reports were introduced into evidence. A review of the accident reports show that three accidents, excluding the one in question herein, occurred on the "Old River Bridge" within a relatively short period of time. All three of the accidents occurred under similar weather conditions as existed in the instant matter. The road surface was wet. The accidents occurred on August 16, 1973, August 17, 1973 and September 5, 1973, the last occurring three days following the accident in question herein. Officer McGuffee, who investigated these other accidents, testified that all of the vehicles involved in said accidents had gone out of control while traveling across the bridge.[1] Although unsure about the exact date, Officer McGuffee testified that he contacted Dixie Finley, the Highway Department maintenance superintendent for LaSalle Parish, regarding the condition of the bridge surface.
Aaron Creel, an employee of the Highway Department, testified he was in charge of laying cationic asphalt and light weight clay aggregate on the "Old River Bridge" on November 10, 1972. He stated that the *1319 bridge was first sprayed with a layer or film of cationic asphalt. Secondly, a layer of light weight clay aggregate was spread across the asphalt, and then passed over by machine rollers. He testified that he was not aware of any minimum temperature requirements which had to be met in order to lay this type of asphalt. He admitted that you should pour asphalt in warm weather, otherwise you might get a surface that will slip. He stated that it was possible that the temperature on November 10, 1972 was less than 60 degrees.
Dixie Finley, LaSalle Parish maintenance superintendent for the Highway Department, testified that following the surfacing of "Old River Bridge" on November 10, 1972 that he performed no inspections of the bridge, nor were any skid tests or co-efficient of friction tests performed. He stated that following this series of accidents in August and September of 1973 that he did personally drive over the bridge and apply his brakes. He found no difficulty in stopping. He admitted that the roadway was not wet at this time, but was damp. Dixie Finley stated that he was informed by Trooper McGuffee after one of the accidents that some inspection of the bridge ought to be performed. He did not know the exact date of his conversation with the trooper.
The assistant district engineer for the Highway Department, Benny Sharp, testified that prior to the accident on September 2, 1973 his department had decided to re-surface the "Old River Bridge" with a hot mix asphalt. His testimony reflects that hot mix asphalt, although more expensive, is more durable than the cationic asphalt. He indicated that the hot mix asphalt would be safer. Sharp's testimony reveals that the hot mix asphalt was laid on the bridge's surface during the first part of December, 1973. Sharp stated that at no time following the decision to re-surface the bridge did anyone make any decision to put any signs at the bridge. He testified that warning signs were not placed at the bridge until after the fourth accident, on September 5, 1973.
In regards to laying light weight clay aggregate Sharp stated that it should not be done in a temperature of less than 60 degrees because there is a possibility you will not get a good job. Specifically, the light weight aggregate in low temperatures might not adhere to the cationic asphalt. Such a result would leave only the smooth asphalt remaining on the roadway's surface.
Sharp admitted that the only inspection of the bridge consisted of employees' periodic and unscheduled crossings of the bridge.
Edgar Mitchell, district engineer for the Highway Department, testified that a few days following the second accident, on August 17, 1973 Dixie Finley came into the office and told him that Trooper McGuffee had contacted him and requested that the Highway Department look into the condition of the bridge. Mitchell stated that he subsequently sent two employees to check the bridge, however the record is unclear as to their findings. Mitchell admitted that sometime following the accidents on August 16 and 17, 1973 and prior to the September 2nd accident a decision was made to re-surface the "Old River Bridge" with hot mix asphalt. Mitchell testified that there had been some talk previous to any of the accidents about re-surfacing the bridge. He stated that there were cracks and spaulds in the surface of the bridge which were a source of worry. The testimony of Mitchell reveals that the cationic asphalt with light clay aggregate laid on the "Old River Bridge" on November 10, 1972 should have lasted from 3 to 5 years. He stated that the bridge, although a primary route, was not heavily traveled.
James Lyons, a research and development engineer for the Highway Department, stated that the department has two skid trailers which are used in testing co-efficient of friction on highways. He stated that skid test numbers 35-37 are used as a basic point from which to determine the safety of highway surfaces. He stated that these numbers, i. e., 35-37, are not absolute determinants, although a skid test number of 20 or less would without question indicate *1320 an unsafe roadway. Lyons testified that cationic asphalt with light weight aggregate, when properly applied, should show a skid test number of 45-50. He further testified that if the light weight aggregate did not adhere to the cationic asphalt the skid test number could be as low as 12.
Hollins Rushing, a materials engineer for the Highway Department, stated that it is his responsibility to test various materials used on the surface of roads and bridges in the state. He testified that he performed no test on the light weight aggregate used on the surface of the "Old River Bridge".
Dr. Joseph Barnwell, who qualified as an expert in the field of engineering and accident reconstruction, testified that he first visited the "Old River Bridge" on August 22, 1973. Dr. Barnwell was at the time investigating the accident which had occurred on August 17, 1973. His inspection of the bridge revealed that there was absolutely no aggregate on the bridge's surface. He stated that the surface, which looked like it had been coated with a plastic like material, had no abrasive qualities whatsoever. Subsequently, Dr. Barnwell conducted skid tests on the bridge's surface. It is admitted that at the time of Dr. Barnwell's test the bridge had been re-surfaced. However, Dr. Barnwell, also conducted an independent skid test which simulated the conditions of the bridge as he saw them on August 22, 1973. Dr. Barnwell was of the opinion that the bridge's surface, which his test showed to have a skid test number of 8, was so slick that it could be compared to ice. Dr. Barnwell found this condition resulted from the fact that the light weight clay aggregate laid on the bridge's surface had been reduced to a powder. Presumably the powder was thereafter washed or blown off of the bridge's surface. Dr. Barnwell concluded that this condition, combined with the fact that the bridge was wet, was the reason for Peter Pickens' vehicle going out of control. He stated that Peter Pickens, given the low co-efficient of friction on this surface, would have been unable to stop his vehicle.
Dr. William Tonn, Jr., who also qualified as an expert in the field of engineering and accident reconstruction, testified on behalf of the Highway Department. Dr. Tonn performed no test on the bridge's surface. He opined that the cause of the accident was due to the actions of the driver Peter Pickens in either accelerating or in decelerating by brake application. Dr. Tonn stated that it was possible the accident was contributed to by the condition of the bridge's surface.
It is well settled in the jurisprudence of this state that the Highway Department is obliged to use ordinary and reasonable care in inspecting and repairing bridges in its system and to keep them in reasonably safe condition. Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La.App.3rd Cir. 1974, writs refused, La., 303 So.2d 182). This duty also includes the duty to provide adequate warnings and safeguards against dangerous situations. Von Cannon v. State through the Department of Highways, 306 So.2d 437 (La. App.3rd Cir. 1975, writs refused, La., 309 So.2d 681, 682); Aymond v. State, through the Department of Highways, 333 So.2d 380 (La.App.3rd Cir. 1976, writs denied Sept. 29, 1977). In Laborde, supra, 583, the court in speaking to this duty stated:
"The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Dupre v. Louisiana Department of Highways, *1321 154 So.2d 579 (La.App.3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La. App.4 Cir. 1973); St. Paul v. MacKenroth, 246 La. 425, 165 So.2d 273 (1964)."
After reviewing the evidence, as hereinabove outlined, we agree with the trial court's finding that the Highway Department was guilty of negligence, which negligence was the proximate cause of the accident between the Shively and Pickens vehicles. Our conclusion in this regard is based upon the following determinations which are all amply supported by the evidence:
1. The Highway Department failed in its duty to properly surface the "Old River Bridge", as a result of which failure the bridge's surface, under the wet conditions that existed, was excessively slick having the co-efficient of friction of ice.
2. The Highway Department further failed in its duty to properly inspect and maintain the aforesaid bridge surface.
3. The condition of the bridge surface on and prior to September 2, 1973 was extremely hazardous to the motoring public. Further, such condition was patently and obviously dangerous to a reasonably careful and ordinarily prudent driver.
4. The Highway Department had both actual and constructive knowledge of this patently dangerous situation (i.e., notice from Trooper McGuffee to Dixie Finley and knowledge of the accidents on August 16 and 17, 1973).
5. The Highway Department in spite of both actual and constructive notice of the hazardous and dangerous condition of the bridge failed to correct the situation and/or warn the motoring public of its existence.
Having determined that the Highway Department was guilty of actual negligence, it is not necessary for us to consider the appellants' alternate contention that the Highway Department is strictly liable under R.C.C. Article 2317.

WAS PETER PICKENS GUILTY OF ANY NEGLIGENCE?
Plaintiff, David Shively stipulated at the time of trial that he was traveling towards Jena, Louisiana, at approximately 50 miles per hour and was about mid-way across the "Old River Bridge" on U.S. 84 when he saw an approaching vehicle go out of control. He stated he saw the vehicle straighten up slightly and then come over into his lane of travel and hit his car head-on. David Shively stated that he never lost control of his automobile and was hit entirely in his lane of travel. There was a drizzling rain at the time of the accident. Mrs. Deanna Shively, who was riding with her husband at the time of the accident, could remember nothing in regards to the collision.
Peter Pickens testified that he was heading in an easterly direction on U.S. 84 and as he approached the "Old River Bridge" was traveling at approximately 40-45 miles per hour. He stated that when his vehicle entered the bridge it suddenly and unexpectedly went out of control. Pickens testified that he did not apply his brakes prior to the vehicle going out of control. He did state that he tried to regain control of his vehicle, by taking his foot off the accelerator and applying the brakes, but was unable to do so. The car fish-tailed and spun into the lane of traffic occupied by the Shively car. Pickens' testimony in this regard was corroborated by all of the guest passengers in his vehicle. Further, the guest passengers testified that at all times prior to the accident, Pickens was driving his vehicle in his proper lane of travel and in a reasonable, proper, and cautious manner.
Pickens further testified that this was the first time he had driven over the "Old River Bridge", although he had ridden over it on one previous occasion. He testified that he had experienced no previous mechanical difficulty with his automobile and that his tires were in good condition. At the time of the accident Pickens and his passengers were on their way home from work after having been discharged for the day due to the rain.
We recognize that under the facts as presented above Peter Pickens, whose vehicle crossed the center line and collided with the Shively vehicle, is presumed under these *1322 circumstances to be negligent. In this regard the court in Simon v. Ford Motor Company, Inc., 282 So.2d 126, 133 (La.1973), stated:
"The trespassing motorist `having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command. In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident. We say this because it seems only reasonable to resolve that a motorist owes to the traveling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course, we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof.'"
As set forth in Simon, supra, it is equally well established that this presumption is a rebuttable one and that the motorist seeking to exculpate himself must establish his freedom from fault by convincing evidence.
The trial court found that Peter Pickens was without any fault whatsoever in connection with the automobile accident and further, that he could have done nothing to avoid the collision with the Shively vehicle.
Our review of the record reveals that the evidence fully supports the trial court's conclusion. There is simply no evidence showing that at the time of the accident or prior thereto, Peter Pickens was driving his vehicle in a reckless or negligent manner; or that he failed to act reasonably in avoiding the collision; or that his vehicle was defective and he knew of it. Rather all the evidence is to the contrary, clearly indicating that Peter Pickens was at all times, driving in a reasonable, prudent, and cautious manner and that his vehicle, without warning skidded out of control and struck the Shively vehicle. We conclude that Peter Pickens has established his freedom from fault. Accordingly we find that the accident occurred solely and proximately as a result of the Highway Department's negligence.

QUANTUM
The remaining issue for determination in this matter is whether the trial court's awards to David Shively and Deanna Shively are excessive. Defendant, although it does not question the awards of special damages, contends that the trial court awards of general damages in the amount of $15,000.00 to David Shively and $125,000.00 to Deanna Shively should be reduced.
In this connection the trial judge in his written reasons for judgment fully described the injuries sustained by David and Deanna Shively. I quote from his reasons:
"Mrs. Deanna Bodin Shively was severely injured as a result of this accident. She sustained severe head injuries as well as internal injuries which included severance of the right rectus muscle, a tear of the mesentery of the small bowel, laceration of the greater omentum and intraperitoneal bleeding and perforation of the small intestine. Her injuries were diagnosed as being a closed head injury with cerebral concussion, intraabdominal injuries and rectus muscle avulsion and a laceration of her eyelid. In addition, it (sic) it has been demonstrated substantially that she sustained traumatic personality changes which have effectively reduced her functional level and modified her behavior. It has also been established that Mrs. Shively sustained a partial permanent hearing deficiency as a result of this accident.

*1323 The treatment she received has been discussed in great detail in the evidence presented. The Court is convinced that she experienced a very painful injury and suffered extensively while on the road to recovery and still experiences occasional headaches that can be directly traced to injuries sustained on September 2, 1973.
The Court is further convinced that Mrs. Shively has suffered brain damage of a mild to moderate nature and as a result thereof experienced depressive neurosis with anxiety. She also has experienced an impairment of memory and a reduction in her formal (sic) mental ability to make good judgment of ordinary complexities. Concerning her condition, one of her physicians, Dr. Phillips stated his conclusions were as follows:
'Well, it was my impression that this lady, although perhaps prone to become depressed under the right circumstances, would likely not have been as profoundly depressed following the accident of 1973 had she not had some brain damage. It is further my impression that she, at the time I initially saw her, had an early organic brain syndrome and a rather profound depression. I considered the prognosis for relief only fair.relief of her depressionbecause of what I perceived her ability to cope, which had been decreased somewhat by the accident. The overall prognosis was guarded although further recovery was considered possible at the time of the initial interview, since only six months had elapsed since the time of the accident.' (Page 20 of Dr. Phillips' deposition)
My opinion is that she is not likely to ever totally regain her ability to recall as she had prior to the onset of the brain syndrome. In other words, I would say that there would be some permanent impairment. (Ibid, Page 27)
Q. In what specific area? You mentioned five areas that you customarily conduct mental status evaluation on. In what areas would you think there would be some permanent effects?
A. Number one, memory. I think that she is going to have minimal difficulty recalling for an indefinite period, very likely permanently. This will not prevent her coping with everyday life, but it certainly will be a frustration on occasion. Number two, her feeling tones, or her affect, will also be minimally constricted. She will not be as likely to respond as spontaneously with the feeling that she very likely could have expressed previously. The third area that I would consider her to not likely have any improvement is in the intellectual area. With her previous history, one would consider that she likely was more capable intellectually prior to the brain damage than she has been since. The history of her being a valedictorian of high school, finishing college in education, her teaching junior and senior English in high school, these types of accomplishments in the intellectual field are rarely achieved by someone with an average I.Q. such as she tested out to have. So that I would think that her improvement intellectually, not having occurred from the initial visit in March to the September visit, she had no improvement intellectually according to the psychological tests that I requested, I would think that she is not likely to have significant improvement in this area, too.'
The conclusions reflected by the above cited portions of Dr. Phillips' testimony is well supported by the evaluations of psychologists who conducted various tests on Mrs. Shively. It is also well supported by lay testimony of her husband and Mr. George Griffing who is a neighbor and an attorney well known to this Court. Other evidence concerning her achievements in high school and college and the testimony of her sister indicate conclusively that Mrs. Shively did suffer mental damage *1324 as a result of the accident on September 2, 1973.
For the pain and suffering which she experienced between September 1, 1973 and the date of the trial of these proceedings and for all future pain and suffering and disabilities which she experienced and will experience as a result of her multiple injuries and pain and suffering associated therewith, this Court would award to Mrs. Deanna Bodin Shively the sum of $125,000.00.
Mr. David T. Shively was injured in this accident as well. He received a depressed fracture of the left malar compound with comminution of the inferior orbital rim and orbital floor. Swelling associated with these fractures required surgical intervention accomplished on September 7, 1973. Dr. Eugene Worthen wired the interior orbital rim with a transfixion karschner wire which was left in place and was in place at the time of the trial. The injury affected his left upper eyelid. In addition, he sustained chest contusions as a result of striking the steering wheel of his vehicle.
At the trial, Mr. Shively testified very stoically. There is no doubt that he must have experienced some pain in connection with his injuries but from his testimony it is evident that Mr. Shively is most reluctant to discuss such things and to minimize the extent of his pain and suffering. This type of attitude is admirable and entirely understandable when viewed in light of the circumstance that his wife was severely injured in the same accident and his attention and concern was obviously directed toward her and noninvolved members of his family for whom he was responsible more than toward himself. For all the injuries sustained by David Shively and pain and suffering associated therewith, this Court would award him the sum of $15,000.00 . . ."
In approaching a review of the awards made in this case we are guided by the well established rule that before an appellate court can disturb an award made by a trial court the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977). This principle was explained in Bitoun v. Landry, 302 So.2d 278, 279 (La. 1974), thusly:
"The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down."
Our examination of the record reveals that the awards made by the trial court to David and Deanna Shively are reasonably supported by the evidence and justifiable inferences therefrom. Although we are of the opinion that the evidence in the instant matter might support smaller awards, we can find no abuse of the trial court's great discretion and accordingly will not substitute our opinion in this regard for that of the trial court.
For the reasons assigned the judgment appealed from is affirmed, defendant-appellant to be taxed with such costs as are legally assessable against it under LSA-R.S. 13:4521.
AFFIRMED.
NOTES
[1] We note that the evidence as to the previous accidents occurring on "Old River Bridge" was properly admitted for the limited purpose of proving notice of any defects or physical conditions in the roadway which were dangerous. Carriere v. Aetna Casualty Company, 146 So.2d 451 (La.App.4th Cir. 1962).