GUIDRY, Judge.
For the reasons assigned in the companion case of Shively et al. v. Pickens et al., 346 So.2d 1314, we conclude that the accident giving rise to this litigation was caused solely and proximately by the negligence of the defendant, State of Louisiana, through The Department of Highways. Accordingly, we affirm the trial court’s determination that the defendant is liable in damages to the plaintiff.
The sole remaining issue in the instant suit concerns the correctness of the trial court’s award of damages. Defendant does not seriously question the award of special damages[1] but does seriously contend that the award of general damages is excessive and should be reduced.
In concluding that plaintiff was entitled to a general damage award of $22,500.00 the trial judge stated as follows in his written reasons:
*1326 “Plaintiff sustained injuries as a result of this accident. In his petition he alleged that he sustained multiple rib fractures, a fracture of the midshaft of the right humerus, contusions and abrasions in the chest, injuries to his right shoulder and right arm, injuries to his neck, injuries in the thoracic area, abrasions about the forehead, an injury to his pelvis, and lacerations of his left foot, right foot and forehead. Immediately after the accident he was transported by ambulance to the Catahoula Parish Hospital at Jones-ville and later he was transferred by ambulance to St. Landry Clinic in Opelousas. Initially he was treated by Dr. Charles W. Roberts of Ferriday who practices in Jonesville who made the initial determination that he sustained a fracture of the left midshaft of the right humerus, multiple fractures of his ribs and lacerations to his forehead. At the Jonesville hospital the fracture of the humerous (sic) was reduced and the extremity was placed in a splint. Lacerations were sutured under local anesthesia. He received conservative treatment for his other injuries and on September 4th at his request was transferred to the care of a physician near his home and was discharged from the Catahoula Parish Hospital.
On the same date, September 4, 1973 he was admitted to the St. Landry Clinic where he was treated until September 21, 1973. At that time it was observed he was 35 years of age and complained of pain in his entire right side of his body, his neck, his shoulder, his hip and his leg. Close examination by the physicians revealed that he was alert and well oriented, suffered from abrasions of the forehead, was complaining of pain in the thoracic area on motion of his neck, his right shoulder and upper extremities were in a plaster splint and on its removal it was observed that circulation, motor reflexes and sensitivity were intact and his hand and his right shoulder and elbow were extremely swollen. There was tenderness to palpation of the thoracic area, the right rib cage, and right pelvis. Passive motion of the right hip produced a claim of pain in his pelvis and circulation and motor ■ reflexes and sensations were present in the lower extremities. A fracture in the right humerous (sic) and multiple fractured ribs were confirmed. On the 17th of September 1973 plaintiff’s physicians performed an open reduction of the fracture to his right humeral shaft. Exhibit — Pichens (sic) 8-A, a photograph, displays vividly where this operation was performed on his arm.
His primary attending physician was Dr. George Bourgeois of Opelousas, Louisiana. He testified on deposition that the rib fracture was of a nature that usually would be painful and the fractures would cause moderate to moderately severe pain when moved including movement of the rib cage caused by breathing. He was of the opinion that by early November of 1973 plaintiff was reasonably free of discomfort with reference to his ribs. He further testified that the arm injury, specifically the fracture of the humerous (sic) required treatment by an orthopedic specialist and in his opinion this type of fracture would cause substantial pain and necessitated use of medication to control pain. Dr. Bordelon assisted in the open reduction of the humerous (sic) on September 17th where internal fixation was done to stabilize the shattered bone.
He testified that plaintiff was discharged from the hospital in Opelousas on September 22,1973 and was seen later by his physician on September 25, October 2, October 9, October 16, October 23, November 6, and finally on December 7, 1973.
He testified that the pneumothorax condition was a condition in which presence of air was found in the chest cavity between the chest wall and the outer surface of his lung. This caused partial collapse of his lung which contributed to the pain he experienced in connection with movement of his rib cage and was caused by the accident. He regarded complaints from this type of condition as substantial and fortunately, plaintiffs lung expanded without necessity of intervention by his physicians. The pneumothorax condi *1327 tion lasted about two weeks after the accident.
Dr. Robert Bordelon was the orthopedic surgeon who participated in the treatment of plaintiff and testified by deposition in this case. He testified that in the operation that occurred on September 17th he placed in position over the fractured portions of plaintiff’s humerous (sic) a special plate and two screws which snugged the bone fragments together. The plate was not removed from the plaintiff’s arm. He was treating plaintiff after his release by Dr. Bourgeois and advised plaintiff he could return to work on a limited basis after February 8, 1974. He further stated that complaints of pain by the plaintiff almost a year after the accident would be consistent with the injuries that he sustained. He stated further that it was possible he would continue to suffer from his arm injury for an indefinite length of time.
Dr. Bordelon discharged plaintiff from his treatment on June 20, 1974. At that time he determined that the union between the separated portions of his fractured arm was such that effectively the bone was about only one-third of its normal size. Accordingly, it would not be as strong as before the fracture. Evaluating the plaintiff’s condition, he found a ten per cent impairment of his right arm and five per cent impairment of his body as a whole. He indicated further that the plaintiff worked very hard to loosen up a very stiff shoulder and arm to get the good result that he did achieve and he was of the opinion that the ten per cent physical impairment entitled plaintiff to a lot of credit for having endured the discomfort and working hard to rehabilitate himself.” (TR. 50-53)
Our examination of the record reflects the above to be a fair summation of the injuries sustained and the treatment received by plaintiff.
We have reviewed the award in this case in light of the principles of appellate review of damage awards recently reiterated by our Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) and conclude that the award made should not be disturbed.
For the reasons assigned the judgment appealed from is affirmed, defendant-appellant to be taxed with such costs as are legally assessable against it under LSA-R.S. 13:4521.
AFFIRMED.

. The trial court awarded plaintiff the total sum of $17,496.00 in special damages which breaks down as follows:
(1) Expenses in Opelousas Orthopedic Clinic $1,016.00
(2) Expenses of Dr. G. S. Bourgeois 423.00
(3) Expenses of C. W. Lanusse (PI 1) 19.00
(4) Expenses of Lee W. Chachere (Court Reporter) 47.25
(5) Joe’s Ambulance Service 35.00
(6) Concordia Parish Ambulance Service 205.00
(7) Dr. Charles W. Roberts 40.00
(8) Catahoula Parish Hospital 365.35
(9) Expenses — St. Landry Clinic (Medical Records) 20.00
(10) For total loss of his 1964 Chevrolet Sedan 400.00
(11) Loss of income for the period September 4, 1973 to June 20, 1974 13,100.00
When the formal judgment was prepared, although the correct total of damages was awarded, i. e., $39,996.60, the author thereof inadvertently omitted item 11 and made a typographical error in transposition of item 8, i. e., $365.53 in lieu of $365.35. These errors can and should be corrected by the trial court under authority of LSA-C.C.P. Article 1951.