415 So.2d 375 (1982)
Hughline DUFFY and Louis W. Duffy
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 14714.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*376 John R. Burgess, Livingston, for plaintiff.
Samuel Cicero, Baton Rouge, for defendant.
Before ELLIS, COVINGTON, LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
This is a suit ex delicto by Louis W. Duffy and his wife, Hughline, against the State of Louisiana, through the Department of Transportation and Development for personal injuries and property damages sustained in a one-vehicle accident. From judgment in favor of plaintiffs, defendant has appealed.

FACTS
On October 30, 1979, between 12:30 and 1:00 p. m., plaintiffs were returning home from a trip to Montpelier where they had purchased approximately 700 pounds of animal feed, which was in the back of their ½ ton pickup truck. Mrs. Duffy was driving and her husband was seated on the passenger side. They were traveling on Louisiana Highway 441, a two-lane gravel road, which traversed an open range area. At the time, the road was being graded by the State. The grading operation caused a buildup or ridge of gravel of approximately seven to ten inches in the center of the road. Mrs. Duffy testified that she made this trip every two or three weeks; that every time she made the trip she saw cattle roaming at large; that she was leery of cattle because one had jumped in front of her before; and that she was familiar with the grading operation, i.e., "graded down one side and come back on another and then I guess they go back over the center to spread it." She further testified that she saw this ridge of gravel in the road both on the trip to Montpelier and on the way back; that the height of this ridge varied along the highway; that she did not see the grader on the way to Montpelier but saw it parked off the *377 road on the way back; that she moved toward the left side of the road after she saw two cows that were to her right in a ditch grazing; also, that her lane had begun to narrow as she approached a cattle guard; that she slowed upon seeing the cattle and slowed further as she turned towards the left lane; that stopping for the cattle would have done no good; that as she turned to the left, her wheels caught in the gravel, causing the steering wheel to pull to the left; and that she pulled the steering wheel back to the right, but the truck went out of control into a ditch and struck a utility pole.
An expert in mechanical engineering testified that if a vehicle turns towards the left and into an uneven ridge of loose gravel in the center of the road, a drag on the left side of the vehicle would be created, causing a sudden heavy pull to the left; and that a strong pull to the right would be necessary to prevent the vehicle from steering violently to the left.
The state employee grading this road testified that he usually made three to four passes over it with his grader; that at the time of the accident he had completed three passes but had not finished his work; that he parked the grader off the road while he took a lunch break; that he had not on this occasion, nor ever, posted signs warning the public of the danger present during grading operations; and that he had never received instructions to post signs.
As a result of this accident, plaintiffs sustained serious personal injuries. Both plaintiffs were taken to Our Lady of the Lake Hospital in Baton Rouge where they were seen by an orthopedic surgeon.

TRIAL COURT
The trial judge based his decision on La. Civ.C. Art. 2317, specifically finding that the buildup of a ridge of loose gravel created an unreasonable risk of harm to others thus causing the highway to be defective. He specifically found that Mrs. Duffy was not driving at an excessive speed, and thus there was no victim fault. Judgment was rendered in favor of Mr. and Mrs. Duffy for property damages in the amount of $6,706.24, and in favor of Mrs. Duffy for general damages in the amount of $7,500.00, and Mr. Duffy for general damages in the amount of $73,250.00.

ISSUES
In appealing, the State argues that the issues on appeal are whether plaintiffs-appellees proved their case by a preponderance of the evidence; whether the negligence of Hughline M. Duffy was the cause of the accident; and whether the trial judge committed manifest error in his factual conclusions and award of damages.

I
As stated above, the trial judge based his decision on La.Civ.C. Art. 2317. The applicability of this Codal Article to the State in cases dealing with road or highway defects has been clearly established. Foggan v. Louisiana Department of Transportation and Development, 402 So.2d 154 (La. App. 1st Cir. 1981); Scott v. State, Department of Transportation and Development, 392 So.2d 482 (La.App. 1st Cir. 1980) writ den. 396 So.2d 921 (1981). To establish a case under this article a plaintiff must prove that: (1) the thing causing the injury was in the custody of the defendant; (2) the thing causing harm was defective, i.e., created an unreasonable risk of harm to others; and (3) that the defective thing caused the plaintiff's injury. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Loescher v. Parr, 324 So.2d 441 (La.1975).
Without question, the accident occurred on La. 441, and this highway was under the care, custody and control or garde of the State. However, did a seven to ten inch buildup or ridge of gravel in the center of the roadway constitute a vice which created an unreasonable risk of harm to others so as to be a defective thing within La.Civ.C. Art. 2317? We are of the opinion that the buildup or ridge of gravel did not create an unreasonable risk of harm to others.
This situation is not analogous to the typical road shoulder case where there is a *378 drop-off. In cases of that nature, the courts have oftentimes stated that the purpose of a shoulder is to allow a vehicle that has momentarily left the traveled portion of the roadway to reenter safely, and that any unusual drop-off prevents a safe reentry. However, this buildup or ridge only existed when the roadway was being repaired. The buildup or ridge is created by the grading operations. Without the normal maintenance work being done, the buildup or ridge would not exist, but yet, the road surface would continue in disrepair. To hold that this buildup or ridge of loose gravel created by the grading operation was a vice that created an unreasonable risk of harm to others would place the State in a "Catch-22" situation. Stated another way, if the State allows the road surface to deteriorate to an unsafe standard, then it would be liable for any accidents under La.Civ.C. Art. 2315 (negligence) or La.Civ.C.Art. 2317 (strict liability), whereas when the State attempts to repair and maintain the road surface, thus creating the buildup or ridge of loose gravel, then it would be liable under La.Civ.C. Art. 2317. Simply stated, the State could not win. The State would be forced to close state highways of this nature to traffic while same are being repaired.
The construction and maintenance of traffic arteries are necessary functions of government. All roads and highways within the state cannot be hard surfaced. Some must be constructed of shell and gravel, and as such must be constantly maintained. The amount of traffic that travels on country shell and gravel roads does not justify the hard surfacing of these roadways, yet these roadways are important to the infrequent travelers that they do carry. Importantly, the buildup or ridge of loose gravel created by the grading operation in maintaining shell or gravel road surfaces is only of a temporary nature, and the probability of an accident being caused thereby is lessened. We are of the opinion that the utility to be derived from road surfaces of shell or gravel far outweighs the risk of harm that might be occasioned by an accident caused by a loose gravel buildup or ridge during grading. Therefore, we find the trial judge in error in relying on La.Civ.C. Art. 2317.

II
Though we have disallowed recovery by plaintiffs under La.Civ.C. Art. 2317, we must still determine whether there is any liability on the part of the State under La.Civ. Art. 2315.
To find the State liable we must first determine that the State owed plaintiffs a duty, that this duty was breached, and that the breach of this duty was the cause in fact of the accident.
It is well established that the State holds the duty to the motoring public to maintain highways in a reasonably safe condition. State Farm Mutual Automobile Insurance Company v. Slaydon, 376 So.2d 97 (La.1979); Brandon v. State, through Department of Highways, 367 So.2d 137 (La.App. 2nd Cir. 1979). In attempting to fulfill its duty to maintain highways in a reasonably safe condition, the State conducted grading operations, which in turn produced a buildup or ridge of loose gravel that could present a danger to an unwary driver. Included within the duty to maintain highways is the concomitant duty to adequately warn motorists of dangerous conditions on highways. State Farm Mutual Insurance Company v. Slaydon, supra, Shively v. Pickens, 346 So.2d 1314 (La.App. 3rd Cir. 1977); Christ v. State, Department of Highways, 161 So.2d 322 (La.App. 3rd 1964); Davis v. Department of Highways, 68 So.2d 263 (La.App. 2nd Cir. 1953). Thus we find that there is a duty to maintain, and while maintaining there is a duty to warn.
The state employee grading this road testified that he did not put out any signs warning of the grading operations, or any other warnings, and that he had never been instructed to post warning signs. Thus the duty to warn was clearly breached.
However, the breach of a duty only results in recovery for plaintiff if the breach is the cause in fact of the injury. *379 Here we have a driver who was familiar with the road, knew that cattle were at large, knew that it was being graded, had traveled this road previously when it was being graded, and knew of the buildup or ridge of gravel. We seriously question of what benefit would a warning sign or signs have been to this driver. What benefit would it have been for a sign to say "CAUTION ROAD GRADER AHEAD," or "CAUTIONROAD WORK AHEAD," or "CAUTIONLOOSE GRAVEL AHEAD"? A sign sufficient in size to give warning in detail of the danger of attempting to cross a buildup or ridge of loose gravel would either have to be so large or the print so small that the sign would become a menace in and of itself to the driver. Therefore, we reach the conclusion that the absence of warning signs, or the breach of the duty to post warning signs, was not the cause in fact of the accident.
Since we have reached the conclusion that the failure to post warning signs was not the cause in fact of the accident, we pretermit discussion of the remaining issues.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and IT IS NOW ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the defendant, State of Louisiana, through the Department of Transportation and Development, dismissing plaintiffs' suit. All costs both in this court and in the trial court are assessed to plaintiffs-appellees.
REVERSED AND RENDERED.
SHORTESS, J., dissents and assigns reasons.
COVINGTON, J., dissents.
SHORTESS, Judge, dissenting.
I respectfully dissent.
The majority holds that (1) under C.C. Art. 2317 the buildup or ridge of gravel did not create an unreasonable risk of harm to others; and (2) under C.C. Art. 2315 the breach of the State's duty to warn of the maintenance work was not a cause in fact of the accident.
In Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) the Supreme Court found that permitting a 3½- to 4-inch drop-off between the highway and the shoulder of the road to exist was a breach of the duty owed by the Highway Department to the plaintiff. Here, the majority says that a 7- to 10-inch buildup of gravel in the middle of the road did not create an unreasonable risk of harm because it was "only of a temporary nature." The expert witness, Andrew McPhate, testified that a turn from the left into an uneven ridge of loose gravel in the center of the road, as in this case, would create a drag on the left side of the vehicle causing a heavy pull to the left; and that a strong pull to the right would be necessary to prevent the vehicle from steering violently to the left. His opinion was uncontradicted and was used by the trial court in its finding that the State had created an unreasonable risk of harm. I feel that any cause which produces a violent effect on an automobile's steering should be considered an "unreasonable risk." I agree with the trial court's conclusion, which should be given great weight.
The majority also found that the State breached its duty to warn plaintiff, but they go further and hold that the breach was not a cause in fact of this accident, because they question what benefit a warning sign or signs would have been to this plaintiff. It would be speculation for me to anticipate what this plaintiff's reaction to a sign warning of the dangerous accumulation of gravel ahead of her would have been.
The trial judge said,
The court finds that the plaintiff was not driving at an excessive speed, but was proceeding as a prudent operator. Further, there is specifically no finding of contributory negligence on the part of either plaintiff, as none was proven by the defendant.
I agree with this finding. The majority pretermits this issue, after having found that the State's fault was not a cause in *380 fact of this accident. I must ask, then: what caused it? I feel that but for the 7- to 10-inch ridge of gravel in the middle of the road and/or the State's failure to warn plaintiff of its presence, this accident would not have happened.
I would affirm the trial court's decision.