CARTER, Judge.
This is a personal injury suit. Plaintiffs, Joe E. Sarphie, III and his wife, Lois Ault-man Sarphie, appeal the judgment of the trial court in favor of defendant, Jerry Co-meaux.
FACTS
On July 11, 1978, between 8:00 and 8:30 p.m., Mrs. Sarphie was returning home from a trip to the grocery store in an automobile owned by plaintiffs when the car slid from the roadway into a ditch along the side of the road. Mrs. Sarphie was not injured and the vehicle was not damaged; *1142 however, Mr. Sarphie alleges that he injured his knee while attempting to push the vehicle from the ditch. The trial court’s denial of recovery to Mr. Sarphie for the injuries to his knee is the only matter complained of on this appeal.
Although there is considerable conflict in the testimony, the trial court found the following facts with which we agree:
“The defendant, Jerry Comeaux, was the owner of Investment Consultants, Inc., which was the developer of what was known as the ‘Summerfield South Subdivision’ in East Ascension Parish. The subdivision was classified by the Ascension Parish Policy Jury as a ‘Campsite Subdivision’ and consisted of forty-nine lots which fronted on two roads (Sum-merfield Lane and Landing Lane) which ran at right angles to one another. The plaintiffs owned and occupied a lot on the South end of Landing Lane which was situated some 2500 feet south of its intersection with Summerfield Lane to the north. Both roads were covered with shells and were over twelve feet in width. They were owned by defendant Comeaux and maintained by him by a grader which he had acquired for that purpose. At the time of the accident the plaintiffs were the only occupants of a lot on Landing Lane.
In connection with the maintenance of his two roads, defendant would, at fairly regular intervals and as conditions demanded, ‘work’ them by using his grader. This machine had a twelve foot blade which was used to scrape the roadway from the ditches’ edges carrying loose shells, dirt, grass, etc., to the center of the road. As the result of working the roads on either side in this fashion there was left a mound running down the center of the road which was allowed to remain there until it was dry enough to be leveled by use of the grader. The length of time that the mound remained of course varied with the weather; according to defendant and the man who was his employee on the grader at the time of the accident, the mound was usually there from two days to a week though one of them could remember a period of as long as two weeks whon the mound was allowed to remain. The testimony was not clear as to the height of the mound but it seems clear that it was too high for it to be straddled by an automobile. When the mounds were left there was still some eight feet of drivable roadway on either side.
Several days prior to the accident with which we are concerned the road had been graded and the mound had not been levelled because of wet weather. Mrs. Sarphie, on the evening of July 11th, left her residence in the family automobile and proceeded to a nearby store. On the way to the store she proceeded on Landing Lane by using the lane to the right or east of the mound running down its center. On her return she used the lane to the west of the mound intending to go to the end of the road and make a ‘U’ turn so as to return to her home, it being her testimony that the mound was too high for her to cross over directly in front of her driveway. When she was a fairly short distance from the end of the road where she was to make her ‘U’ turn, her rear wheels slid into the ditch. Being unable to drive the car out by herself, her husband sought to assist her by pushing and suffered the injury to his knee.
The facts surrounding Mr. Sarphie’s physical condition are that he had had knee trouble for over twenty years and that the operation which this accident necessitated to his knee was his fourth. He testified that when he pushed on the car the cartilege in his knee ‘popped like a .25 caliber’ and that ‘he knew what it was because he had had it before’.”
SPECIFICATION OF ERROR
Appellants contend that the trial court erred in not finding defendant strictly liable under LSA-C.C. art. 2317, and in finding that the injuries sustained by Mr. Sar-phie were the result of “victim fault”; alternatively, appellants contend that recovery should have been allowed under LSA-C.C. art. 2315.
*1143 TRIAL COURT
The trial court found that although the defendant may be strictly liable as the owner and custodian of the road under LSA-C.C. art. 2317, there was no liability in the instant case because the harm that occurred was caused by the “fault of the victim”. The trial court found that Mrs. Sarphie was clearly aware of the road condition and that Mr. Sarphie was aware of his knee condition. The trial court further found that there was no violation of a duty by defendant with respect to maintenance of the road as the defendant maintained the road on a regular basis and in accordance with the accepted methods for maintenance of roads of this type. The trial judge concluded that the accident was due to Mr. Sarphie’s own fault and there was no negligence on the part of the defendant. Judgment was rendered accordingly.
ISSUES
In appealing; appellants argue that the trial court was incorrect in its conclusion that the damages sustained by Mr. Sarphie in the instant ease were caused by his own fault; and that the trial court was in error in concluding that defendant was not negligent in maintaining the roadway so as to be liable for his injuries.
Before directing our attention to the specific assignments of error by appellant, it is important to note that Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982) has clarified the applicability of LSA-C.C. art. 2317 to situations such as presented herein. In Kent, supra, in regard to LSA-C.C. arts. 2315[1] and 2317, the Supreme Court stated:
“... the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm. (Emphasis by Supreme Court)
“In a strict liability case [Article 2317] against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective) ...”
In view of the above and in light of the factual situation presented in the instant case, it is unnecessary to separately discuss the applicability of LSA-C.C. art. 2315 and 2317. Once plaintiff proves in the Article 2315 case that the defendant either knew or should have known of the risk or in an Article 2317 case that the thing causing the injury was either owned by the defendant or the defendant had garde over the thing, then the manner of proof and the analysis to determine whether defendant is liable is the same. However, because of the specific assignments of error by appellant and the prior jurisprudence treating of these articles, separate discussion will follow.
I.
The applicability of LSA-C.C. art. 2317 to custodians of roads has been clearly established. Duffy v. State, Dept. of Transp., etc., 415 So.2d 375 (La.App. 1st Cir.1982); Foggan v. La. Dept. of Transp. and Dev., 402 So.2d 154 (La.App. 1st Cir. 1981); Scott v. State, Dept. of Transp., etc., 392 So.2d 482 (La.App. 1st Cir.1980), writ *1144 denied, 396 So.2d 921 (La.1981). To prevail under this article a plaintiff must prove: (1) the thing causing the injury was in the custody of the defendant; (2) the thing causing harm was defective, i.e., created an unreasonable risk of harm to others; and (3)that the defective thing caused the plaintiffs injury. Duffy v. State, Dept. of Transp., etc., supra; Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Loescher v. Parr, 324 So.2d 441 (La.1975).
It is clear that the accident happened on Landing Lane, a private owned roadway under the care, custody and control of defendant. However, it is unnecessary to determine whether the buildup or ridge of gravel, shell, dirt, grass, etc. in the center of the roadway created an unreasonable risk of harm to others so as to be a defective thing within LSA-C.C. art. 2317, since the other essential elements of recovery under LSA-C.C. art. 2317 are not present. Mrs. Sarphie was not injured, nor was the vehicle damaged. The injury complained of in this proceeding resulted from Mr. Sarphie attempting to push the vehicle out of the ditch. It is clear that the buildup in the center of the roadway did not create an unreasonable risk of the type of harm experienced by Mr. Sarphie in the instant case, i.e., injuring his knee while pushing the vehicle out. Simply stated, the buildup or ridge was not a cause-in-fact of plaintiff’s knee injury: the knee injury was caused by plaintiff attempting to push the vehicle out of the ditch. There were numerous other more practical and safer ways to remove the vehicle. Further, as found by the trial court, Mrs. Sarphie was clearly aware of the road conditions having trav-elled it numerous times and Mr. Sarphie was clearly aware of the condition of his knee.
II.
Counsel for appellants argues in the alternative that defendant is liable under LSA-C.C. art. 2315 contending that defendant was negligent in maintaining the road. The cases cited in support of this argument are cases pertaining to highway defects which are in the nature of traps. In those cases, a duty was breached by the defendants in allowing a hazardous condition to exist for an unreasonable length of time. To find the defendant liable, we must first determine that defendant owed plaintiff a duty, that this duty was breached, and that the breach of this duty was a cause-in-fact of the accident. An individual has a duty to maintain a highway or roadway in a reasonably safe condition if the individual is the custodian of the roadway.
In the instant case, in attempting to fulfill his duty to maintain this roadway in a reasonably safe condition, the defendant conducted grading operations which in turn produced a buildup or ridge of gravel, shell and dirt that could present a danger to an unwary driver. Although defendant clearly had the duty to maintain the roadway as the custodian thereof, any breach of such duty only results in recovery for plaintiff if the breach is the cause-in-fact of the injury. Duffy v. State, Dept. of Transp., etc., supra.
In the Duffy case, the driver turned her vehicle into a ridge of gravel in the center of the road to avoid hitting cattle in the road. The vehicle went out of control into a ditch and struck a utility pole. The driver and her husband, a passenger, were seriously injured. The road was being graded by the State and the grading operations caused the ridge of gravel. This court held that the ridge of gravel created by the grading operation did not create an unreasonable risk of harm because the State was performing its duty to keep the road in good repair. Although this Court found that the State had breached its duty to warn travelers of the dangerous conditions created by the grading operation, that breach of duty was not a cause-in-fact of plaintiffs’ harm. The driver of the vehicle was familiar with the road, knew the road was being graded, and knew of the ridge of gravel.
In the instant case, the factual situation as concerns the road condition is simi *1145 lar to Duffy[2], supra and further, regardless of the condition of the road, this was not a cause-in-fact of the injury sustained by Mr. Sarphie. The defendant did not owe Mr. Sarphie a duty to protect him against the risk he might injure himself by trying to push his wife’s car out of a ditch. The risk that a plaintiff would injure his knee in attempting to remove a vehicle from the ditch was not a risk encompassed by defendant’s duty to maintain the roadway. Clearly any conduct on the part of defendant, whether negligent or not, did not constitute a breach of a legal duty imposed to protect against the risk involved in the instant case.
For the above reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. Technically speaking LSA-C.C. art. 2316 seems to be more applicable to the instant case than La.C.C. art. 2315. However, it has become a recognized practice to refer to negligence cases as LSA-C.C. art. 2315 cases whether LSA-C.C. art. 2315 or LSA-C.C. art. 2316 applies.

. Cf. Duffy, supra, wherein this Court stated at pages 415 So.2d 377, 378:
“This situation is not analogous to the typical road shoulder case where there is a drop-off. In cases of that nature, the courts have oftentimes stated that the purpose of a shoulder is to allow a vehicle that has momentarily left the traveled portion of the roadway to reenter safely, and that any unusual drop-off prevents a safe reentry. However, this buildup or ridge only existed when the roadway was being repaired. The buildup or ridge is created by the grading operations. Without the normal maintenance work being done, the buildup or ridge would not exist, but yet, the road surface would continue in disrepair. To hold that this buildup or ridge of loose gravel created by the grading operation was a vice that created an unreasonable risk of harm to others would place the State in a ‘Catch-22’ situation. Stated another way, if the State allows the road surface to deteriorate to an unsafe standard, then it would be liable for any accidents under La.Civ.C. Art. 2315 (negligence) or La.Civ.C. Art. 2317 (strict liability), whereas when the State attempts to repair and maintain the road surface, thus creating the buildup or ridge of loose gravel, then it would be liable under La. Civ.C. Art. 2317. Simply stated, the State could not win. The State would be forced to close state highways of this nature to traffic while same are being repaired.”