WATKINS, Judge.
This action was brought by Janet Bennett against National Fire & Marine Insurance Co., liability insurer of Roberto Quin-tana, deceased, against the State of Louisiana through the Department of Transportation and Development, and against State *257 Farm Mutual Automobile Insurance Co.,[1] uninsured/underinsured motorist coverage insurer of Mrs. Bennett. From a judgment in favor of Mrs. Bennett and against National Fire for its policy limits of $5,000 and against State Farm for $30,768.00, and dismissing the DOTD, Mrs. Bennett appeals. We amend and affirm.
On July 10, 1980, Mrs. Bennett went on a motorcycle ride with Roberto Quintana from Morgan City to Pierre Part, passing through Belle River on Louisiana Highway 70. Quintana drove the motorcycle, and Mrs. Bennett rode behind him, holding onto him by the waist. As they entered a curve on the outskirts of Pierre Part, the motorcycle encountered red sand, dirt, and gravel material on the roadway, went out of control, traveled onto the shoulder, reentered the roadway, still out of control, went onto the shoulder again, struck a highway sign, and flipped over. Quintana was killed, and Mrs. Bennett was badly cut and bruised, and sustained a sprained ankle.
The shoulders of the highway in the area in question had been graded by a roadgrader operated by one Rubin Andrew, an employee of the DOTD. The roadgrader was stationed in Napoleonville, Louisiana, and was driven to Pierre Part, where Andrew proceeded to lower the blade and grade the shoulder travelling in the direction of Belle River. When he got to Belle River, Andrew turned the grader around, and graded the shoulder on the opposite side, travelling in the direction of Pierre Part.
Andrew, whose testimony was successfully impeached on that material point, denied that he had graded the curve where the motorcycle went out of control. He further testified that he had always res-craped the hard surface of the highway to remove gravel brought onto the roadway from the shoulder. In any event, he testified he had stopped grading the shoulder about one half hour before the accident, which occurred about 2:30 p.m., and had begun his return trip to Napoleonville.
We are satisfied from the testimony of William Kirkland and his stepson, Michael Broussard, that, regardless of what the efforts of Andrew may have been, a substantial quantity of shoulder material (sand, dirt, and gravel) was left on the hard surfaced portion of the road upon completion of Andrew’s grading operations, and that Andrew and hence the DOTD was negligent in failing to scrape it off. Thus, this case is totally unlike Duffy v. State Department of Transportation and Development, 415 So.2d 375 (La.App. 1st Cir.1982), writ denied, 420 So.2d 448 (La.1982), where a gravel road was left with a ridge of gravel for a brief period (over the lunch hour) during grading operations.
The present case is analagous in many respects to Rue v. State Department of Highways, 372 So.2d 1197 (La.1979), and to Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980), wherein it was held that the shoulders of the highway must be made safe for motorists, just as must the hard surface. It follows that if the DOTD is obligated to make the shoulders of a highway safe, still more is it obligated to make the hard surface safe, certainly by not leaving shoulder materials on the hard surface of the roadway permanently, or longer than the minimum period necessary to maintain the shoulder by grading.
However, from Sinitiere, supra, we see that although the DOTD may be negligent, the motorist may be negligent as well. In the present ease, Quintana traveled the entire distance that Andrew had graded, from Belle River to Pierre Part. If he was at all observant, he must have seen shoulder material on the road surface the entire distance. This material did not cover the entire surface, Kirkland and Brous-sard’s testimony reveals, but extended several feet onto the right lane. Operating a two wheeled vehicle, Quintana could have avoided the gravel and other debris by travelling between the center line and the edge of the debris. Instead, he entered the debris. This was negligent.
As both DOTD and Quintana were negligent, they were joint tortfeasors, and are liable in solido.
*258 Mrs. Bennett sustained a severe cut on the forehead and eyelid, which left her with a permanent scar. She also sustained an ankle injury which is virtually healed. Because of anguish and pain from the accident, and domestic difficulties (she and her husband had separated temporarily at the time of the accident, and her mother and father had obtained a divorce), Mrs. Bennett was forced to enter a mental hospital, and seek psychiatric counseling. She attempted suicide, entered the mental hospital a second time, and continued under psychiatric care. Dr. William Cloyd of Lafayette, her psychiatrist, testified he would probably discharge Mrs. Bennett at the time of her next visit, which would take place about six months from the date of trial. We see that Mrs. Bennett sustained painful and troubling injuries, but with the exception of the scar they were not of a permanent nature. Thus we find the quantum of the award of the trial court was not abuse of the great discretion accorded the trial court.
We therefore amend the judgment of the trial court to find solidary liability on the part of the DOTD. In all other respects, the judgment of the trial court is affirmed. All costs shall be borne by the DOTD.
AMENDED AND AFFIRMED

. State Farm neither appealed nor answered the appeal. The record contains a satisfaction of judgment agreement between plaintiff and State Farm.