GOTHARD, Judge.
This is a suit for damages in an automobile accident. The plaintiff has appealed the finding of contributory negligence on her part and quantum. A defendant insurance company has answered the appeal.
On January 25, 1985 cars driven by the plaintiff, Susan Jeansonne, and the defendant, Shirley Reyes, collided near the intersection of two private roads in an industrial tract located in Jefferson Parish. Mrs. Jeansonne, individually and in behalf of her minor son, Daniel, filed suit against Ms. Reyes and her insurer, Insurance Company of the State of Pennsylvania, and State Farm Mutual Automobile Insurance Company, uninsured/underinsured motorist insurer of Ms. Jeansonne. The plaintiff later added as defendants the Succession of Max N. Tobias, owner of the land, and its insurer, Aetna Casualty and Surety Company. Third party claims and a cross claim were filed by the defendants. Mrs. Jeansonne settled with Ms. Reyes and Pennsylvania and with State Farm prior to trial, agreeing to indemnify Ms. Reyes against Aetna’s cross-claim.
The jury found that Mrs. Jeansonne, Ms. Reyes, and the succession of Max N. Tobi-as were equally at fault, 33V3% each, and that Mrs. Jeansonne sustained damages of $30,000 and her son $200. In accordance with the jury’s findings, the court awarded Mrs. Jeansonne $10,000 for her damages and $66.60 for her son’s, plus legal interest and costs, all to be paid by Aetna.
The issues before this court are the contributory negligence of Mrs. Jeansonne, the fault of the Succession of Max Tobias, and the adequacy of the award for Mrs. Jean-sonne’s damages.
The accident occurred on a road that is roughly parallel to Jefferson Highway. That road runs approximately north-south, forming a “T” intersection with an east-west road that we may call the “stem” of the T. A building in the northwest quadrant creates an obstacle to the view of motorists approaching the intersection. There were then no traffic signs or lines separating the traffic lanes.
*1036 Mrs. Jeansonne was driving from north to south, while Mrs. Reyes was driving toward the east and turned north at the intersection. The cars collided a short distance, roughly fifteen feet, from the intersection. There were no independent eyewitnesses. Both women testified that they were driving slowly and carefully but had not seen each other soon enough to avoid the collision; however, they disagreed as to the positions of their cars on the road and as to which car hit the other. Mrs. Jean-sonne said that when she saw Ms. Reyes’ car it was headed toward her in her lane. Mrs. Jeansonne then swerved left to avoid Ms. Reyes’ car but hit a pot hole and her car stopped, whereupon Ms. Reyes’ car hit hers. Ms. Reyes’ account of the accident is that she was driving in the middle or to the right side of the road to miss the pot holes and had made the turn when she saw the Jeansonne car on her side of the road. She stopped and the Jeansonne car ran into hers. The damage to Mrs. Jeansonne’s car was on the right fender, headlight and hood. We note that both drivers had trav-elled the roads frequently and were familiar with the intersection.
John Exnicios, a traffic engineer, testified that he had examined the intersection, made measurements, and prepared chart exhibits showing the restricted sight at the intersection. He calculated that two vehicles approaching the intersection at the same speed would come into view of each other about 57 feet from the center of the intersection, while a minimum sight distance of 100 feet is desirable to provide time for the driver to react at normal speed. Although the traffic is light, the restricted view is a hazard and should have been corrected by a stop sign at the stem side of the T intersection. On cross examination Exnicios stated that on a dry surface at 15 miles per hour the emergency stopping distance is about 30 feet. The defendant’s traffic engineering expert, Douglas Robert, having visited the accident scene twice and made measurements, testified that in his opinion a traffic sign was not necessary because of the low volume of traffic at that T intersection and because the person driving on the stem of the T must slow down to turn. Max Tobias, Jr. an owner and manager of the property on which the roads were located, testified that he had not received complaints about the intersection or received notice of any other accident. He had no reason to install a traffic control device.
NEGLIGENCE OF MRS. JEANSONNE
Whether or not Mrs. Jeansonne was negligent and her negligence was a cause of the accident hinges upon whether she maintained a proper lookout. The driver’s duty is stated succinctly in Richardson v. Continental Ins. Co., 468 So.2d 675 (La.App. 3rd Cir.1985), writs denied 474 So.2d 1304 (La.1985), at 682:
...Motorists traveling upon Louisiana’s highways are charged with the duty to exercise reasonable care in the operation of their vehicles, which duty encompasses the obligation to maintain proper control of their vehicle and a proper lookout for hazards, which by use of ordinary care and observation one should be able to see....
As the accident happened about fifteen feet before the intersection and there is no evidence that either car was speeding, we must conclude that if Mrs. Jeansonne was looking straight ahead as she testified, she should have seen Ms. Reyes' car approaching soon enough to avoid her. Accordingly, we affirm the jury’s finding that Mrs. Jeansonne was negligent and her negligence was a cause of the accident.
NEGLIGENCE OF LANDOWNER
In its answer to the appeal Aetna argues that the landowner, represented by Max Tobias, Jr., was not negligent in failing to install a stop sign, as recommended by plaintiff’s expert, and the lack of a stop sign was not a cause of the accident. The expert had testified that a decision to place a traffic control device at an intersection is a matter of “engineering and professional judgment.” Aetna takes the position that Tobias, Jr. may not be held to the standard of a traffic engineer but only that of a reasonable man. As he had managed the property since 1974 with no accidents and *1037 no complaints about the intersection, he had no knowledge of a hazard.
The plaintiff argues that the need for a stop sign was not necessarily beyond the grasp of the average person as the obstructed view at the intersection was apparent. The landowner should have been aware of the hazard from his own observation and taken steps to correct the condition. She argues further that the facts support a finding of strict liability for the condition of the road, which would obviate the need to prove the landowners’ knowledge of the unsafe condition.
The owner of land upon which a private road is located is under a duty to maintain the roadway in a reasonably safe condition which duty gives rise to an action under the simple negligence theory for breach of that duty. Sarphie v. Comeaux, 428 So.2d 1141 (La.App. 1st Cir.1983), writ denied 433 So.2d 161 (La.1983). Also, the applicability of strict liability to custodians of roads has been established in the jurisprudence. Duffy v. State, Dept. of Transp., etc., 415 So.2d 375 (La.App. 1st Cir.1982), writ denied 420 So.2d 448 (La.1982); Foggan v. La. Dept. of Transp. and Dev., 402 So.2d 154 (La.App. 1st Cir.1981). As set out by the court in Sarphie v. Comeaux, supra, at 1144, the plaintiff must prove the following to prevail under a theory of strict liability:
.. .(1) the thing causing the injury was in the custody of the defendant; (2) the thing causing harm was defective, i.e., created an unreasonable risk of harm to others; and (3) that the defective thing caused the plaintiffs injury. Duffy v. State, Dept. of Transp., etc., supra; Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Loescher v. Parr, 324 So.2d 441 (La.1975).
In Sarphie the hazard on a private road was a mound of shells, etc. in the center of the roadway caused by roadscraping, which was to be leveled later. When plaintiffs wife attempted to make a U-tum at the end of the mound the rear wheels of her car slid into a ditch. The plaintiff injured his knee while trying to push the car out. The court held that the plaintiff could not recover under a theory of negligence or of strict liability because the alleged hazardous condition or unreasonable risk of harm in the roadway was not a cause-in-fact of Mr. Sarphie’s injury.
Such is the case here, since Mrs. Jeansonne and Ms. Reyes collided on the straightaway, about fifteen feet away from the intersection. As noted above, plaintiffs expert indicated that at fifteen miles per hour the emergency stopping distance is about thirty feet. Within the parameters of the expert’s calculations as to visibility around the building and accepting the parties’ testimony that they were driving extremely slowly, we conclude that they had sufficient viewing space in which to see each other and stop. It is mere speculation to believe, as the appellant urges, that Ms. Reyes’ stopping for a stop sign would have prevented the accident; hence we do not find that the absence of a sign was a cause of the accident. We hold that the jury was clearly wrong in finding that the Succession of Max Tobias was at fault.
Because of Mrs. Jeansonne’s settlement with Shirley Reyes, there is no remaining defendant from whom the plaintiff may recover and the issue of adequacy of the award to Mrs. Jeansonne is moot.
Accordingly, for the reasons discussed above, we reverse the judgment insofar as it renders judgment in favor of Susan Tuja-gue Jeansonne and against the Aetna Casualty and Surety Company for damages for herself and her minor son, Daniel J. Jean-sonne, plus legal interests and for all costs and assess costs to the plaintiff. We affirm the finding that Susan Tujague Jean-sonne and Shirley Reyes were at fault but amend and decree that they were at fault in the amount of 50% each.
REVERSED IN PART, AFFIRMED AND REVISED IN PART.
GAUDIN, J., concurring in part and dissenting in part.